# EXHIBIT 24

An official website of the United States government. Here's how you know

**FBI New York**
FBI New York Press Office
ny-opa@fbi.gov

October 16, 2025

# Founder and CFO of Investment Firm 777 Partners Charged With $500 Million Fraud Scheme

United States Attorney for the Southern District of New York Jay (SDNY) Clayton, Assistant Director in Charge of the New York Field Office of the Federal Bureau of Investigation (FBI) Christopher G. Raia, and Special Agent in Charge of the New York Field Office of Homeland Security Investigations (HSI) Ricky J. Patel announced today the unsealing of an indictment charging Joshua Wander, the cofounder of investment firm 777 Partners, with conspiracy to commit wire fraud, wire fraud, conspiracy to commit securities fraud, and securities fraud. The charges in the indictment arise from an alleged scheme by Wander and others to defraud 777 Partners' private lenders and investors out of more than $500 million. Wander surrendered to federal agents this morning and will be presented this afternoon before U.S. Magistrate Judge Ona T. Wang.

The former CFO of 777 Partners, Damien Alfalla, previously pled guilty to an information before U.S. District Judge Arun Subramanian on October 14, 2025, in connection with his participation in the fraud scheme at 777 Partners. Alfalla is cooperating with the government.

"As alleged, Wander used his investment firm, 777 Partners, to cheat private lenders and investors out of hundreds of millions of dollars by pledging assets that his firm did not own, falsifying bank statements, and making other material misrepresentations about 777's financial condition," said U.S. Attorney Jay Clayton. "When financial firms lie to their lenders, they do not merely breach contracts. They undermine the integrity and stability of our credit markets and our financial system more broadly. America's financial markets are a source of strength and the envy of the world. The women and men of the SDNY and our law enforcement partners will continue to work tirelessly to protect our investors and our markets. We would also like to thank the U.S. Securities and Exchange Commission, which separately initiated civil proceedings against the defendants today."

"Joshua Wander and Damien Alfalla, the cofounder and CFO respectively of the 777 Partners investment firm, allegedly stole more than $500 million from his company's lenders and investors through fabricated lies of success and doctored financial records," said FBI Assistant Director in Charge Christopher G. Raia. "The defendants' alleged deceit targeted the wallets of his trusting stakeholders to obfuscate the failing fiscal ventures of the business. With our law enforcement and prosecutorial partners, the FBI maintains its steadfast determination to disrupt any fraudulent scheme seeking to exploit victims before they're left with millions in losses."

"As alleged, the defendants, through 777 Partners, lied to lenders and investors, double-pledged collateral, and used restricted funds to bankroll risky acquisitions—putting nearly $500 million and the lifelines of structured-settlement beneficiaries at risk," said HSI Special Agent in Charge Ricky J. Patel. "In actuality, the defendants put forth an illusion of stability that was a years-long house of cards. This alleged scheme was self-serving, siphoning funds meant for victims and leaving investors and lenders holding the bag. HSI New York, together with the U.S. Attorney's Office for the Southern District of New York and the FBI's New York Field Office, will not stop protecting the United States financial markets and our unsuspecting communities from unscrupulous actors."

As alleged in the indictment unsealed today in Manhattan federal court:[1]

Joshua Wander was the cofounder of 777 Partners, a private investment firm headquartered in Miami, Florida. As alleged, Wander, along with Alfalla and others, lied to 777 Partners' lenders and investors to fraudulently obtain nearly $500 million.

777 Partners' initial and primary business model was to underwrite and finance structured settlements. Structured settlements are financial arrangements whereby personal injury victims or lawsuit beneficiaries receive compensation through a series of periodic payments rather than receiving a single lump-sum payment. 777 Partners financed its purchases of structured settlements by using credit facilities with various private lenders, the terms of which Wander negotiated. 777 Partners was required to collateralize, or secure, its borrowing from the credit facilities with the future payments under the purchased structured settlements, as well as cash. 777 Partners consistently made profits by purchasing, aggregating, and then securitizing structured settlements, and grew to one of the largest buyers of structured settlements in the secondary market.

Beginning in 2018, Wander began investing capital from the structured settlement business into new sectors with less certain cash-flow profiles, including streaming platforms, airlines, and professional sports teams such as Sevilla FC and Genoa CFC. Despite warnings from employees, including Alfalla, and contrary to the terms of the credit facilities, Wander directed that restricted funds from 777 Partners' lenders be used to cover the firm's acquisitions and expenses. Wander's spending caused 777 Partners to face significant cash and collateral shortfalls. Wander sought to conceal those shortfalls and maintain access to funds by pledging more than $350 million in assets as collateral to certain lenders, knowing that 777 Partners either did not own the collateral or had already pledged the collateral to other lenders. Wander also directed employees of 777 Partners to digitally alter bank account statements to reflects millions of dollars in cash on hand that the firm did not have.

In 2021 and 2022, as 777 Partners faced major liquidity constraints, Wander solicited more than $100 million in outside investments in 777 Partners through the sale of cumulative preferred equity membership interests in 777 Partners and an affiliated entity. Wander, Alfalla, and other employees of 777 Partners misrepresented the financial condition of the firm in soliciting these investments.

By March 2023, Wander's scheme began to unravel. One of the firm's lenders confronted Wander about allegations of double-pledged assets, and Wander falsely claimed there had been an error caused by 777 Partners' antiquated computer system. A few days later, Wander again falsely assured the lender, among other things, that the double-pledging had been inadvertent. In October 2024, the High Court in London issued a winding-up order, formally declaring 777 Partners bankrupt. 777 Partners still owes its lenders hundreds of millions of dollars.

Wander, 44, of Miami, Florida, is charged with one count of conspiracy to commit wire fraud, one count of wire fraud, and one count of securities fraud, each of which carries a maximum sentence of 20 years in prison. Wander is also charged with one count of conspiracy to commit securities fraud, which carries a maximum sentence of five years in prison.

Alfalla, 59, of Pelham, New York, is charged with one count of conspiracy to commit wire fraud, one count of wire fraud, and one count of securities fraud, each of which carries a maximum sentence of 20 years in prison. Alfalla is also charged with one count of conspiracy to commit securities fraud, which carries a maximum sentence of five years in prison.

The maximum potential sentences are prescribed by Congress and provided here for informational purposes only, as any sentencing of the defendant will be determined by the judge.

Mr. Clayton praised the outstanding work of the FBI and HSI. Mr. Clayton also expressed appreciation for the assistance of the U.S. Securities and Exchange Commission, which separately initiated civil proceedings against the defendant today.

This case is being handled by SDNY's Securities and Commodities Fraud Task Force. Assistant U.S. Attorneys Marguerite B. Colson, Sarah Mortazavi, and Alexandra Rothman are in charge of the prosecution

[1] As the introductory phrase signifies, the entirety of the text of the indictment and the descriptions of the indictment set forth herein constitute only allegations, and every fact described should be treated as an allegation.