UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 25 Cr. 473 (JPO) |
| -v.- | |
| JOSHUA WANDER, | |
| Defendants. | |

STATE OF NEW YORK     )
                      ) ss.
COUNTY OF NEW YORK   )

Nicolas Roos, pursuant to 28 U.S.C. §1746, hereby affirms the truth of the following under penalties of perjury:

1.      I am an Assistant United States Attorney in the United States Attorney's Office for the Southern District of New York ("SDNY"), and I am one of the prosecutors that was assigned to the investigation concerning 777 Partners LLC ("777") that led to this criminal case. I make this Declaration to state clearly and categorically that at no time did I knowingly disclose any matter occurring before the grand jury in this investigation to any member of the press or media, or to any person not authorized to receive such information under Federal Rule of Criminal Procedure 6(e). I did not provide information about the investigation to *Semafor*, *Josimar*, or any other media organization identified in the defendant's motion. At no time did I authorize any other person to make such a disclosure, and I have spoken to all of the members of the prosecution team, and they have likewise confirmed that they did not disclose any matter occurring before the grand jury to any member of the press or media, or to any person not authorized to receive such information under Rule 6(e).

2.      This Declaration is based on my personal knowledge of the facts and circumstances described below, my conversations with other Government officials, and my review of related records. Because this Declaration is being offered for the limited purpose of responding to certain of the allegations contained in the defendant's motion, this Declaration does not contain every detail regarding my participation in this matter.

3.      From the beginning of the investigation until approximately December 2024, when I became a supervisor of the Securities and Commodities Fraud Task Force, I was one of the AUSAs working on investigating financial misconduct at 777 Partners LLC and various frauds committed by Joshua Wander (the "Investigation"). In approximately May 2024, AUSA Sarah Mortazavi was assigned to work on the investigation; in approximately October 2024, AUSA Marguerite Colson was assigned to work on the investigation; and in approximately April 2025, AUSA Alexandra Rothman was assigned to work on the investigation. From the start of the investigation until approximately December 2024, the 777 investigation was supervised by AUSAs Scott Hartman and Matthew Podolsky.

4.      Following receipt of the defendant's February 27, 2026 letter, and his April 7, 2026 motion, I conducted a careful review of communications and documents relating to this investigation. I spoke with the other AUSAs who worked on this matter, the supervisory AUSAs who oversaw the investigation, and the case agents from the Federal Bureau of Investigation ("FBI") and Homeland Security Investigations ("HSI") assigned to the investigation.

**I. The 2023 *Semafor* Article Was Not From a Government "Leak"**

5.      

2

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████

6.      On or around November 22, 2023, SDNY's chief of public affairs was contacted by a reporter with *Semafor* regarding an upcoming story concerning 777. The *Semafor* reporter followed up on or around November 27, 2023 and told SDNY's chief of public affairs, in substance, that the publication thought I was working on the matter. To be clear, at the time of the inquiry I was not working on the matter as SDNY did not have an open investigation.

7.      On November 28, 2023, following the outreach from *Semafor*, SDNY administratively opened an investigation into 777. ███████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████

8.      On November 30, 2023, *Semafor* published an article authored by Liz Hoffman titled "Feds Probe Sports Investor 777 Over Money Flows" (the "2023 *Semafor* Article"). I did not communicate with anyone at *Semafor* regarding this article—indeed, I do not believe I had ever met or spoken with anyone from *Semafor* about anything as of this date.[1] Additionally, I did

---

[1] The motion cites an on-the-record statement I made to *Semafor* in February 2026 regarding SDNY's recently announced corporate self-disclosure program for financial crimes. That statement, which was approved by the United States Attorney and transmitted through SDNY's press office, had nothing to do with a pending case or grand jury investigation. I have never had any discussion with *Semafor* about an investigation, and I do not believe I had ever communicated with anyone from *Semafor* prior to February 2026.

not directly or indirectly provide any of the information that appeared in that article. At the time

of the article's publication, I had taken no investigative steps and the U.S. Attorney's Office had

not commenced grand jury proceedings: we had not served any grand jury subpoenas, we had not

sought testimony from any witness, we had not made any presentations to the grand jury, we had

not presented any evidence or charges to the grand jury, nor had the grand jury deliberated at any

point. Notwithstanding the non-existence of grand jury material at the time the 2023 *Semafor*

Article was published, I have reviewed the article's contents and confirm there is no grand jury

information in the article. From my review of the 2023 *Semafor* Article, I have identified several

factual inaccuracies, all of which indicate it did not come from a government source:

      a.     The article reports that I was "overseeing" an investigation regarding 777 and was

"part of a DOJ team." That was inaccurate: at the time of the article's publication, SDNY had only

just opened an investigation, had taken no investigative steps, there was no "team" in place, and I

was not "overseeing" anything.

      b.     The article states that SDNY was investigating "whether 777 violated U.S.

money-laundering laws." ███████████████████████████████████████

████████████████████████████████████

      c.     The article states that SDNY was "discussing a joint investigation with law

enforcement in Miami" and references outreach to "Florida prosecutors." This was inaccurate: to

the extent there was any investigation by federal or state prosecutors in Miami, I was unaware of

it, and as far as I know none of the supervisory AUSAs had discussions with anyone about a joint investigation or partnership.[2]

       d.      While not appearing in the article, in his motion the defendant describes outreach 777 received from *Semafor* as indicating there was a "formal" investigation at an "early stage." While the "formal" characterization did not appear in the 2023 *Semafor* Article, that characterization is nonetheless inaccurate as SDNY did not have an open investigation, let alone a "formal" investigation, prior to Semafor's outreach.

## II. The 2024 *Semafor* Article Was Not From a Government "Leak"

9.      On December 11, 2023, I was contacted by outside counsel for 777 Partners, and shortly thereafter we connected by telephone. On or about February 8, 2024, I served a grand jury subpoena on 777 through their outside counsel. ███████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████

10.     On March 12, 2024, *Semafor* published an article authored by Liz Hoffman titled "Apollo Veteran Josh Harris' Firm Cuts Ties With 777 Insurance Alum as DOJ Probe Widens" (the "2024 *Semafor* Article"). Like the 2023 *Semafor* Article, I did not communicate with anyone

_____

███████████████████████████████████████████████████
█████████████████████████████████████████████████████
█████████████████████████████████████████████████████
█████████████████████████████████████████████████████
█████████████████████████████████████████████████████
█████████████████████████████████████████████████████

at *Semafor* regarding the 2024 *Semafor* Article—indeed, I do not believe I had ever met or spoken with anyone from *Semafor* about anything as of this date. Additionally, I did not directly or indirectly provide any of the information that appeared in that article. ███████

██████████████████████████████████████████████████████

█████████████████████████████████████ No witnesses had testified before the grand jury, and no documents had been presented to the grand jury. I have reviewed the contents of the 2024 *Semafor* Article and confirm there is no grand jury information in the article; indeed, the article is largely about a separate company terminating a former employee who had worked at 777. From my review of the 2024 *Semafor* Article, I have identified several factual inaccuracies, all of which indicate it did not come from a government source:

a.    The article reports that "[t]he U.S. Justice Department has been investigating whether 777 broke money-laundering laws." ████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████

b.    The article reports that "[p]rosecutors have interviewed current and former 777 employees … people familiar with the matter said." That too is inaccurate: as of the date of the 2024 *Semafor* Article, SDNY had not interviewed any current or former 777 employees.

11.    ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

**III. The 2024 *Josimar* Article Was Not From a Government "Leak"**

12.     Beginning in or around June 2024, I learned that the defendant, Joshua Wander, was speaking to people about the investigation. For instance:

a.     On or about June 12, 2024, after completing a witness interview with a 777 employee, I learned that Wander was in communications with the witness and aware of that witness's interview at SDNY.

b.     On or about July 6, 2024, at a social event in the Hamptons, Wander approached an Assistant United States Attorney, who was not a member of the prosecution team, and stated, in substance, that he had been subpoenaed.

13.     On or about November 18, 2024, *Josimar* published an article by Paul Brown and Philippe Auclair titled "Empire on the Run" (the "2024 *Josimar* Article"). I did not communicate with anyone at *Josimar* regarding the 2024 *Josimar* Article or, directly or indirectly, share any grand jury material with the publication. I have also reviewed the contents of the 2024 *Josimar* Article and confirm there is no information in it that is grand jury material. By November 18, 2024, when this article was published, SDNY's investigation was overt and well-known to the defendant, 777's officers and employees, witnesses, and other third parties. ████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████████████ ██████████████████     In other words, there were dozens of individuals with knowledge of the investigation and the facts contained in the 2024 *Josimar* Article who were under no duty of confidentiality or secrecy at the time. For example, the defendant himself had previously made or

authorized statements to *Josimar*,[3] knew that "[c]riminal subpoenas [had] been sent to employees of … 777," knew that I was one of the AUSAs assigned to the investigation, and knew that FBI, HSI, and the SEC were also investigating.

**IV. No Member of the Prosecution Team "Leaked" Grand Jury Material**

14.     In or about March 2026 and again on April 28 and 29, 2026, I separately spoke to each of the AUSAs that have been assigned to this investigation, each of the AUSAs who have supervised this investigation, and the FBI and HSI agents assigned to this investigation about the allegations contained in the defendant's motion. They each affirmed that they have not disclosed grand jury material or other information learned in the course of the investigation to any member of the press.

**V. Many Articles Questioned 777's Finances Without Reference to A Government Investigation**

15.     Exhibit A is a Daily Mail article authored by Lewis Steele and published on October 7, 2023, titled, "Prospective Everton owner Josh Wander hits out at 'misleading' reports about 'instability and unrest' over 777 Partners' takeover at Goodison Park in open letter to fans."

16.     Exhibit B is a New York Times article authored by Tariq Panja and published on October 10, 2023, titled, "The Mystery Company With One Foot in the Premier League."

17.     Exhibit C is a New York Times article authored by Tariq Panja and published on October 18, 2023, titled, "Everton Sale Stalls Amid Questions About Buyer's Financials."

---

[3] *See, e.g.*, Philippe Auclair and Paul Brown, *The 777 Football Mystery* (July 3, 2023) (Martinez Decl. Ex. 21) (quoting a statement from 777's general counsel defending Joshua Wander).

18.    Exhibit D is a Forbes article authored by Mike Ozanian and published on November 6, 2023, titled, "777 Partners Still Reportedly Scrounging For Cash To Buy Everton FC."

19.    Exhibit E is a Sports Pro article authored by Ed Dixon and published on November 28, 2023, titled, "Everton takeover: 777 Partners still 'trying to raise money' to complete deal."

20.    Exhibit F is a New York Times article authored by Tariq Panja and published on May 4, 2024, titled, "Lawsuit Accuses Everton Bidder 777 Partners of $600 Million Fraud."

21.    Exhibit G is an ESPN article authored by Mark Ogden and published on June 1, 2024, titled, "Everton seek new buyer after deal with 777 Partners collapses."

I declare under penalty of perjury that the foregoing is true and correct. Executed on April 29, 2026

_____
Nicolas Roos
Assistant United States Attorney