

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

May 13, 2026

**BY ECF**

The Honorable J. Paul Oetken
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

    Re:    *United States v. Joshua Wander*, **25 Cr. 473 (JPO)**

Dear Judge Oetken:

The Government respectfully writes to request that the Court issue a protective order, pursuant to Federal Rule of Criminal Procedure 16(d)(1) and 28 U.S.C. § 1651, to immediately enjoin defendant Joshua Wander from deposing trial witnesses in this case without this Court's permission. Leveraging an ongoing civil proceeding in Florida state court, Wander has already taken the deposition of at least one likely Government witness at his criminal trial, during which his counsel posed questions solely of significance to this criminal case. The Government understands that the deposition of another likely Government witness is scheduled for May 22, 2026. The Government intends to move expeditiously to intervene and stay discovery in the state court proceeding, where the discovery phase is anticipated to close on May 22, 2026. Given the upcoming scheduled deposition, the Court's immediate intervention is necessary to protect the integrity of this criminal prosecution and to prevent the defendant from circumventing the careful limits on criminal discovery imposed by the Federal Rules of Criminal Procedure and the Jencks Act.

Under the authority conferred by Rule 16(d) of the Federal Rules of Criminal Procedure and the All Writs Act, the Government respectfully requests that the Court (i) enjoin the ongoing state court proceeding or, at a minimum, enjoin the defendant from noticing or taking depositions of likely trial witnesses in this matter; and (ii) schedule a conference with all parties to address the appropriate scope of a permanent injunction.

### I.    Background

On October 16, 2025, a grand jury in this District returned Indictment 25 Cr. 473 (JPO) (the "Indictment"), charging Wander, the co-founder and former CEO of 777 Partners, in four counts with conspiracy to commit wire fraud, wire fraud, conspiracy to commit securities fraud, and securities fraud. (ECF No. 2). The Indictment alleges that Wander led a scheme to defraud the lenders and investors in 777 Partners by making false and misleading representations and

Hon. J. Paul Oetken
May 13, 2026

fabricating financial documents to inflate 777 Partners' financial performance, to exaggerate its assets, and to conceal the firm's unsanctioned use of loans and investments.

As alleged in the Indictment, Wander pledged more than $350 million in assets as collateral to private lenders, knowing that 777 Partners either did not own the collateral or had already pledged the collateral to other lenders. Ind. ¶ 1. As part of its business operations, 777 Partners set up credit facilities with at least three private lenders, Lender-1, Lender-2, and Lender-3. Ind. ¶ 4. These credit facilities permitted 777 Partners to borrow against assets (often structured settlements), provided the loans were fully collateralized with a sufficient borrowing base of eligible and unencumbered assets in addition to cash. Ind. ¶ 4. 777 Partners was required to provide its lenders with monthly compliance reports calculating the borrowing base predicated on the pledged collateral and cash on hand. Ind. ¶ 5. At Wander's direction, 777 Partners used funds drawn from the credit facilities extended by private lenders for impermissible purposes, such as to pay for acquisitions and expenses of 777 Partners, in violation of the restrictions on the use of those funds. Ind. ¶¶ 6-8, 10. In addition, and also at Wander's direction, 777 Partners recorded structured settlements in the firm's book as assets collateralizing multiple credit facilities, even though 777 Partners had never acquired those assets, nor had they entered into formal agreements to acquire those assets. Ind. ¶ 11.

To conceal this fraud, Wander directed his employees to prepare false and misleading borrowing base compliance reports that misrepresented the amount of cash in 777 Partners' collection accounts, and the amount of receivables pledged to the relevant lender. In actuality, the compliance reports included pledged collateral that 777 Partners had never acquired, or had pledged to a different lender, and thus was encumbered. Ind. ¶¶ 14, 15. Wander also directed employees to falsify the amount of cash that 777 Partners had on hand, including by temporarily transferring funds into an account for purposes of capturing misleading screenshots of bank account balances, and digitally altering existing bank account records to make the balances appear higher. Ind. ¶¶ 16, 17.

By March 2023, Wander's fraud scheme had started to unravel. Lender-1 uncovered that Wander had double-pledged thousands of assets to Lender-2. Ind. ¶ 19. When Lender-1 confronted Wander about this double-pledging, Wander repeatedly lied on recorded calls, falsely claiming, among other things, that the double-pledged assets were the result of a "screwup" caused by 777 Partners' "antiquated" computer system. Ind. ¶¶ 20, 21. In April 2023, Wander provided Lender-1 with a report that, for the first time, disclosed a borrowing base deficiency of nearly $200 million. Wander repeatedly promised Lender-1 that new assets and proceeds from deals would arrive to reduce the shortfall in collateral, but those deals never came to fruition. Ind. ¶ 22.

In April 2024, the Australian airline Bonza, which was owned by 777 Partners, entered voluntary administration after aircraft lessors repossessed Bonza's entire fleet of aircraft. Several other businesses in the 777 Partners' portfolio also failed over the course of 2024. In October 2024, the High Court in London issued a winding-up order, formally declaring 777 Partners bankrupt. Ind. ¶ 23.

As 777 Partners was collapsing, civil litigation ensued. In May 2024, Lender-1 filed a civil complaint against Wander and 777 Partners, among others. *Leadenhall v. Wander*, 24 Cr. 3453

2

Hon. J. Paul Oetken
May 13, 2026

(JGK) (S.D.N.Y.) (the "SDNY Action"). In October 2024, Lender-3 also filed a civil complaint against 777 Partners and Wander, among others, first in the Southern District of New York and then, in May 2025, in Florida state court. *ING Capital LLC v. 777 Partners*, 2025-1552-CA-01 (the "Florida Action," and together with the SDNY Action, the "Civil Actions"). The Civil Actions contain substantively similar allegations to those appearing in the Indictment. Among other things, they allege a scheme by Wander to double-pledge assets and conceal this double-pledging through the preparation of fraudulent monthly borrowing base reports. (*See, e.g.*, Florida Action ¶¶ 2-3).

On October 14, 2025, the former CFO of 777 Partners, Damien Alfalla, pleaded guilty and agreed to cooperate with the Government. *See United States v. Alfalla*, No. 25 Cr. 468 (AS) (S.D.N.Y.).

On October 16, 2025, the SEC brought a parallel civil action against Wander. *SEC v. Wander*, 25 Civ. 8565 (VM) (S.D.N.Y.) (the "SEC Action"). The Government moved to intervene and stay discovery until the conclusion of this case. (25 Civ. 8565 (VM), ECF No. 12). Wander consented to the stay of discovery. (*Id.* at 1). On May 11, 2026, Judge Marrero granted the Government's motion and stayed discovery in the SEC Action. (25 Civ. 8565 (VM), ECF No. 46).

On May 6, 2026, as part of the Florida Action, Lender-3 deposed Alfalla, a Government cooperating witness.[1] Civil counsel for Wander attended the deposition and questioned Alfalla as well. Having now reviewed the deposition transcript, it is obvious that civil counsel inquired into matters that were plainly irrelevant to the Florida Action and instead were calculated to gain information relevant to Wander's criminal case, including the pending motion for a hearing based on purported leaks of grand jury information. Among other things, civil counsel asked Alfalla whether he had ever lied to federal prosecutors, whether he planned to testify truthfully in his criminal trial, how many times he had met with federal prosecutors, the substance of what he told federal prosecutors, whether Alfalla had leaked information to news reporters, and whether Alfalla was aware that a source leaked information about the government's criminal investigation into Wander before that information was public. (*See* Alfalla Dep. at 92-99, 121, 131, 134-35, excerpts attached as Ex. A).

## II.    Applicable Law

The Federal Rules of Criminal Procedure do not empower the defendant to conduct ranging discovery of the witnesses against him. "Rule 16 is … the sole authorized vehicle under the Federal Rules of Criminal Procedure for pre-trial discovery in criminal cases." *United States v. Louis*, No. 04 Cr. 203 (LTS), 2005 WL 180885, at *2 (S.D.N.Y. Jan. 27, 2005). Under Rule 16(a), a defendant is entitled to certain specific categories of information and material; Rule 15 tightly circumscribes the use of depositions; and Rule 17 provides only limited use of subpoenas to compel pre-trial production, *see United States v. Goel*, No. 22 Cr. 396 (PKC), Doc. No. 51, at 3-4 (S.D.N.Y. Mar. 22, 2023). Additionally, Congress has conferred special protection on witness statements through the Jencks Act, and a defendant is typically not entitled to such statements until trial.

---

[1] Alfalla answered certain questions but largely invoked his rights under the Fifth Amendment in response to questioning.

Hon. J. Paul Oetken
May 13, 2026

To prevent discovery abuses, Rule 16(d) grants a court the discretion to establish "the precise conditions under which the defense may obtain access to discoverable information." *In re Terrorist Bombings of U.S. Embassies in E. Afr.*, 552 F.3d 93, 122 (2d Cir. 2008). In particular, Rule 16(d)(1) provides that the court may regulate discovery by issuing protective orders, for good cause, that "deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Pursuant to Rule 16(d), a court has the authority to prevent criminal defendants from circumventing the criminal discovery process through the use of civil discovery. *See United States v. Stewart*, 872 F.2d 957, 962-63 (10th Cir. 1989) ("the district court has authority under Rule 16(d) to prevent the parties from abusing discovery procedures, including attempts to avoid the limitations on criminal discovery through the use of civil discovery provisions" (collecting cases)). For instance, a court may issue a protective order precluding civil depositions or other abusive discovery practices. *See, e.g., United States v. United States v. Gerace*, No. 19 Cr. 227 (JLS) (MJR), 2021 WL 4134886, at *3 (W.D.N.Y. Sept. 10, 2021), *aff'd*, No. 21-2419, 2023 WL 3243477 (2d Cir. May 4, 2023) (court properly enjoined state action under the All Writs Act in order to enforce federal criminal discovery rules, among other reasons); *United States v. Hills*, No. 16 Cr. 329, 2016 WL 6893272, at *1 (N.D. Ohio Nov. 23, 2016) (granting the Government's motion for a Rule 16(d) protective order directing criminal defendant "not to depose potential Government witnesses in a related civil case or otherwise use civil process to compel discovery"); *United States v. Phillips*, 580 F. Supp. 517, 518-520 (N.D. Ill. 1984) (granting the Government's motion for a Rule 16(d) protective order barring criminal defendant from taking or receiving further discovery in a civil suit until the conclusion of his criminal trial); *see also S.E.C. v. Saad,* 229 F.R.D. 90, 91 (S.D.N.Y. 2005) (permitting limited document discovery to proceed in an SEC enforcement action while postponing until after completion of the criminal case any depositions of the prosecutor's chief witnesses).

Additionally, under the All Writs Act, 28 U.S.C. § 1651, a court may enjoin a defendant from obtaining discovery in a civil action that would undermine the federal criminal discovery rules. *See United States v. Gerace*, No. 21-2419, 2023 WL 3243477, at *1-*3 (2d Cir. May 4, 2023) (affirming district court's injunction, under the All Writs Act, of a criminal defendant's civil action against two government witnesses given "the government's interest in protecting witnesses from threats and intimidation, preserving grand jury secrecy, and enforcing the federal criminal discovery rules"); *see also Trump v. Vance*, 941 F.3d 631, 638 (2d Cir. 2019) ("the Anti-Injunction Act does not bar the United States from seeking a stay of state court proceedings"); *In re Grand Jury Subpoena*, 866 F.2d 231, 233-34 (5th Cir. 2017) (affirming district court's stay of a state court civil action where suit was brought by subject of the investigation against two executives, one of whom was cooperating).

### III.    The Defendant Should Be Enjoined from Misusing Civil Discovery

Pursuant to Rule 16(d) and the All Writs Act, the Court should enjoin the state court proceeding until the conclusion of trial, or, at a minimum, the Court should restrict the defendant's taking of depositions until the parties can appear before this Court and be heard further.

The public interest strongly weighs in favor of the requested relief. Allowing Wander to pursue unfettered civil discovery—unsupervised by this Court—would undermine the careful balance struck by Congress in the Federal Rules of Criminal Procedure. Criminal discovery is

Hon. J. Paul Oetken
May 13, 2026

purposefully limited to prevent three specific harms: perjury and manufactured evidence, witness intimidation, and unfair surprise at trial. *SEC v. Tuzman*, 15 Civ. 7057 (AJN), ECF No. 43, at 3-4 (S.D.N.Y. Mar. 1, 2016). These are not abstract concerns. Broad civil discovery allows criminal defendants to preview the prosecution's case, learn witness identities, and tailor testimony accordingly—all while invoking the Fifth Amendment to avoid reciprocal disclosure. *See United States v. Percevault*, 490 F.2d 126, 129 (2d Cir. 1974) (noting that the Jencks Act, 18 U.S.C. § 3500, "represents a legislative determination that access to a witness' statements could be useful in impeaching a witness but was not intended to be utilized in preparation for trial"); *United States v. McCarthy*, 292 F. Supp. 937, 942 (2d Cir. 1968) ("The claimed need to see such statements in advance in order to prepare to rebut them is little more than open notice of an intention to tailor testimony to fit the statement."); *SEC v. Nicholas*, 569 F. Supp. 2d 1065, 1070 (C.D. Cal. 2008) (the criminal rules were "purposefully limited so as to prevent perjury and manufactured evidence, to protect potential witnesses from harassment and intimidation, and to level the playing field between the government and the defendant, who would be shielded from certain discovery by the Fifth Amendment").

These concerns are paramount in this case. Wander has now deposed Alfalla, a Government cooperating witness, who the Government expects will testify at trial. Absent court intervention, the defendant is likely to depose another likely trial witness next week. During the Alfalla deposition, civil counsel for Wander questioned Alfalla about topics that have nothing to do with the civil matter. Instead, counsel's questions were plainly designed to develop impeachment material for a trial in this case and to drum up information on a meritless motion pending before this Court. This is precisely the circumvention of criminal discovery rules that courts consistently reject. *See SEC v. Chestman*, 861 F.2d 49, 50 (2d Cir. 1988) (holding, in the context of a motion to intervene, the Government has "a discernible interest" in "prevent[ing] discovery in the civil case from being used to circumvent the more limited scope of discovery in the criminal matter."); *SEC v. Beacon Hill Asset Mgmt. LLC*, 2003 WL 554618, at *1 (S.D.N.Y. Feb. 27, 2003) ("The principal concern with respect to prejudicing the government's criminal investigation is that its targets might abuse civil discovery to circumvent limitations on discovery in criminal cases."); *Bd. of Governors v. Pharaon*, 140 F.R.D. 634, 639 (S.D.N.Y. 1991) ("A litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery.").

Hon. J. Paul Oetken
May 13, 2026

   To protect the integrity of the criminal case before it, the Court should use its authority under Rule 16(d) of the Federal Rules of Criminal Procedure and the All Writs Act to (i) enjoin the state court proceeding until the conclusion of trial in this case, or at a minimum enjoin the defendant from taking depositions of likely trial witnesses in this matter; and (ii) schedule a conference with all parties to address the appropriate scope of a permanent injunction.

           Respectfully submitted,

           JAY CLAYTON
           United States Attorney

By: _____
           Marguerite B. Colson
           Sarah Mortazavi
           Alexandra Rothman
           Assistant United States Attorneys
           (212) 637-2580

cc: Counsel of Record (by ECF)