UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

*v.*

JOSHUA WANDER,

*Defendant*.

**No. 25 Cr. 473 (JPO)**

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT JOSHUA WANDER'S PRETRIAL MOTIONS**

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT.................................................................................. 1

ARGUMENT .......................................................................................................... 2

I.     THE GOVERNMENT'S OPPOSITION ONLY HIGHLIGHTS THE NEED FOR A BILL OF PARTICULARS............................................................ 2

     A.     The Government's Shifting Theory of the Allegedly Fraudulent Collateral Deprives Mr. Wander of Adequate Notice. ............................... 2

     B.     The Government Should Identify All Misrepresentations. ......................... 4

     C.     The Identities of the Unnamed Co-Conspirators Are Necessary for Mr. Wander's Defense................................................................................. 6

II.     THE COURT SHOULD ORDER DISCLOSURE OF THE FILTER PROCESS AND PRODUCTION OF THE LOVE INTERVIEW NOTES............ 7

     A.     The Filter Team's Mishandling of Privileged Communications Warrants Disclosure of the Filter Process. ................................................. 7

     B.     Mr. Wander Has Standing To Request Information About the Filter Process. ...................................................................................................... 9

     C.     Mr. Wander Need Not Prove an Intentional Intrusion to Obtain the Information That Would Reveal One........................................................ 10

     D.     The Love Interviews Independently Warrant Disclosure. .........................11

CONCLUSION.....................................................................................................11

# TABLE OF AUTHORITIES

Page(s)

*ING Cap., LLC v. 777 Partners LLC*,
   No. 2025-001552-CA-01 (Fla. Cir. Ct. Miami-Dade Cnty. May 20, 2026) ............................... 4

*Lugosch v. Congel*,
   219 F.R.D. 220 (N.D.N.Y. 2003) .................................................................................. 10

*United States ex rel. O'Donnell v. Countrywide Home Loans, Inc.*,
   822 F.3d 650 (2d Cir. 2016) ......................................................................................... 6

*In re Search Warrants Executed on Apr. 28, 2021*,
   No. 21-MC-425 (JPO), 2021 WL 2188150 (S.D.N.Y. May 28, 2021) .................................... 8

*United States v. Ghavami*,
   882 F. Supp. 2d 532 (S.D.N.Y. 2012) .............................................................................. 9

*United States v. Mandell*,
   No. 09 Cr. 662 (S.D.N.Y. June 30, 2009) ......................................................................... 4

*United States v. Metter*,
   860 F. Supp. 2d 205 (E.D.N.Y. 2012) .............................................................................. 7

*United States v. Middendorf*,
   No. 18 Cr. 36 (JPO) (S.D.N.Y. Jan. 17, 2018) ............................................................... 4, 5

*United States v. Mitlof*,
   165 F. Supp. 2d 558 (S.D.N.Y. 2001) .............................................................................. 6

*United States v. Nachamie*,
   91 F. Supp. 2d 565 (S.D.N.Y. 2000) ............................................................................... 5

*United States v. Rinsch*,
   807 F. Supp. 3d 238 (S.D.N.Y. 2025) .............................................................................. 5

*United States v. Rinsch*,
   816 F. Supp. 3d 488 (S.D.N.Y. 2026) .............................................................................. 5

*United States v. Savin*,
   No. 00 Cr. 45 (RWS), 2001 WL 243533 (S.D.N.Y. Mar. 7, 2001) ...................................... 3, 6

*United States v. Schwimmer*,
   892 F.2d 237 (2d Cir. 1989) ........................................................................................ 10

*United States v. Stewart*,
   No. 02 CR. 395 JGK, 2002 WL 1300059 (S.D.N.Y. June 11, 2002) ...................................... 8

## PRELIMINARY STATEMENT

The government's opposition only highlights the need for relief.  After a years-long investigation, the government treats as self-evident precisely the information withheld from the defense.  The government insists that the Indictment, its letter responding to Mr. Wander's request for a bill of particulars, and civil discovery obtained in other cases already tell Mr. Wander everything he needs to prepare his defense.  Those materials do not.  The government's letter does not narrow the theory elicited in the Indictment: for the same conduct, the government has variously alleged that 777 Partners lacked title to collateral, that 777 Partners pledged the same collateral twice, and that 777 Partners pledged receivables that never existed.  Each is a different accusation requiring a different defense, and the government will not say which it intends to prove at trial.  Worse, the government, with no basis in law, invokes civil litigation as a substitute for particulars.  But a protective order in one of those cases bars the use of materials here, and the government has moved to cut off Mr. Wander's access to discovery in the other.  The government cannot have it both ways.

The government's opposition to Mr. Wander's filter motion fares no better.  After first admitting that its filter team "inadvertently" produced to Mr. Wander potentially privileged materials belonging to 777 Partners, the government now explains that it may have intentionally produced 777 Partners' potentially privileged materials to him without notice to the privilege holder.  The Court should order the government to provide details about its filter process so Mr. Wander can determine whether to seek other appropriate relief.

1

**ARGUMENT**

I.      **THE GOVERNMENT'S OPPOSITION ONLY HIGHLIGHTS THE NEED FOR A BILL OF PARTICULARS.**

      A.      **The Government's Shifting Theory of the Allegedly Fraudulent Collateral Deprives Mr. Wander of Adequate Notice.**

To prepare a defense, Mr. Wander must know what information conveyed to 777 Partners' lenders was allegedly false and how—whether the allegation is that 777 Partners lacked title, pledged the same collateral twice, or invented receivables that never existed. Each is a distinct claim that calls for a distinct defense, and the letter the government sent on April 22, 2026, Dkt. No. 37-6, only obscures which the government intends to prove.

Consider Paragraph 9 of the Indictment, which alleges that sometime around May of 2021 Mr. Wander "provided Lender-1 with a list of structured settlements that 777 Partners claimed to own, but did not in fact have title to." When asked to identify the assets that 777 Partners did not hold title to, Dkt. No. 37-5 Request 4, the government pointed the defense to a "listing of assets *doubled-pledged* to Lender-1." Dkt. No. 37-6 Response 4 (emphasis added). The Indictment itself alleges that lack of title and double-pledging are not the same. Indictment ¶ 1 ("To obtain financing for the firm's operations . . . WANDER pledged more than $350 million in assets as collateral . . . knowing that 777 Partners *either* did not own the collateral or had already pledged the collateral to other lenders" (emphasis added)). The government's letter thus does not answer the question Mr. Wander posed—it answers a different question entirely. The same defect infects Paragraph 14 of the Indictment. The opposition asserts that this paragraph "directs Wander to a specific borrowing request, identified by amount ($30 million), date (early 2022), and lender (Lender-3)," and then supplements the paragraph in the Indictment by pointing to a civil complaint regarding the same borrowing request. Dkt. No. 44 ("Opp.") 21. But where the Indictment alleges that this request was supported by both double-pledged assets

and assets 777 Partners never acquired, the ING complaint alleges that the receivables "did not exist at all."  Rothman Decl.,[1] Ex. B ¶¶ 1, 58–63.  The government must provide particulars to explain these discrepancies.

The government's assurance that the defense need only "cross-reference three compliance reports during a given month," Opp. 15, does not meet the legal standard for adequate notice. That exercise would at most identify double-pledged assets, but not assets that were supposedly fictitious.  Being able to identify allegedly fictitious assets is critical, because the government has never alleged that *all* of the assets comprising a borrowing base—which can number in the thousands—were fraudulent.  Nor can the defense reconstruct the calculations itself: the asset-level data underlying each report is located in the MPFin system, which the government concedes it produced only as "a copy of the backup," Opp. 16 n.4—not the complete, usable data needed to audit the reports.

Finally, the government cannot satisfy its obligation to provide sufficient particularity by pointing to discovery in civil cases.  *See United States v. Savin*, No. 00 Cr. 45 (RWS), 2001 WL 243533, at *4 (S.D.N.Y. Mar. 7, 2001) (granting bill of particulars even where defendant had "experienced civil and bankruptcy counsel who have been engaged in evaluating the discovery arising out of the related civil litigation").  The government's position is not just wrong as a matter of law per *Savin*; it is not possible under the terms of one of the cited civil cases and is undermined by the government's own conduct.  The government moved to stay the ING and SEC proceedings, alleging that "Wander has improperly attempted to use depositions in this matter to end-run the carefully defined limits of federal criminal discovery in the Criminal

---

[1] All named declarations and exhibits cited herein are as defined in Mr. Wander's opening briefs, Dkt. Nos. 36, 39, and the government's opposition brief, Dkt. No. 44.

Case."  U.S. Mot. to Intervene at 4, *ING Cap., LLC v. 777 Partners LLC*, No. 2025-001552-CA-01, Filing No. 248655649 (Fla. Cir. Ct. Miami-Dade Cnty. May 20, 2026); *accord* Mot. to Intervene, *SEC v. Wander*, No. 25 Civ. 8565 (VM), Dkt. No. 12 (S.D.N.Y. Dec. 11, 2025).  The government cannot cite the civil discovery to provide notice while simultaneously working to cut off his access to it.  The government's position is also wrong because in the Leadenhall case that it directs Mr. Wander to "consult," Opp. 15, parties are subject to a protective order that prevents the use of confidential materials in "any other litigation or proceeding," Confidentiality Stipulation & Protective Order, *Leadenhall Cap. Partners LLP v. Wander*, No. 24 Civ. 3453, Dkt. No. 296 ¶ 6(a) (S.D.N.Y. May 8, 2025).

**B.      The Government Should Identify All Misrepresentations.**

The government claims it need not identify the statements it intends to prove were false at trial.  Opp. 17.  But its cited authorities prove the opposite.  In *Mandell*, the prosecution filed a 34-page indictment cataloguing 39 overt acts, each pinned to a specific calendar day and dollar figure down to the cent.  Indictment ¶ 41(z), *United States v. Mandell*, No. 09 Cr. 662, Dkt. No. 2(S.D.N.Y. June 30, 2009) (alleging that "[o]n or about September 9, 2004, MANDELL caused Sky Capital to issue a check in the amount of $20,521.15 to a company that had provided MANDELL and his family with personal travel services, including a private jet").  Compare these specifics to the allegation in the Indictment here: "By *in or about 2022*, the undisclosed borrowing base deficiency with Lender-1 had grown to *approximately $200 million*."  Indictment ¶ 15 (emphases added).  The 54-page *Middendorf* indictment is similarly more granular than the Indictment in this case.  It lists specific dates, names six co-conspirators, identifies the cooperating witness by role and act, states the alleged misrepresentations directly, and quotes verbatim email exchanges between the defendants furthering the alleged conspiracy.  *See*

Indictment ¶¶ 21, 36, *United States v. Middendorf*, No. 18 Cr. 36 (JPO), Dkt. No. 1 (S.D.N.Y. Jan. 17, 2018).

The government's attempt to distinguish *United States v. Nachamie*, 91 F. Supp. 2d 565 (S.D.N.Y. 2000), only proves Mr. Wander's point. *See* Opp. 16. The government correctly notes that the court in that case ordered particulars because the government "had not yet informed the defendants which of the[] claims were false and in what way they were false." Opp. 18 (quoting *Nachamie*). The government claims, however, that this case is different because "the defendant knows where to locate his false statements." *Id.* But that was precisely the situation in *Nachamie*: the defendants knew that the allegedly false Medicare claims were among the 2,000 claims identified by the government in discovery. *See Nachamie*, 91 F. Supp. 2d at 571. What the *Nachamie* defendants lacked was any indication of *which* of those claims the government would try to prove false, and why. Mr. Wander's case is on all fours: he knows the vast universe of documents in which the alleged misrepresentations could be found, but not which statements within that universe are alleged to be false. The government must bridge that gap. *See United States v. Rinsch*, 807 F. Supp. 3d 238, 253 (S.D.N.Y. 2025) (ordering "a written specification of each of the materially false statements").

Finally, the government overlooks the distinction between statements made to *obtain* property and those made to *retain* it. *See* Opp. 19. The Indictment alleges extensive concealment conduct—statements about the cause of the deficiency, the status of the facilities, and the funds in the collection accounts. But that conduct cannot, on its own, sustain a wire fraud count, because a misrepresentation "aimed solely at retaining" money already obtained is not wire fraud, even if the government asserts such alleged misrepresentations are otherwise probative. *United States v. Rinsch*, 816 F. Supp. 3d 488, 491 (S.D.N.Y. 2026); *see United States*

*ex rel. O'Donnell v. Countrywide Home Loans, Inc.*, 822 F.3d 650, 662 (2d Cir. 2016) (requiring "contemporaneous fraudulent intent"). Whether the government may offer such retention statements at trial is a separate question from the one Mr. Wander raises, and which he is entitled to answer from the government: which representations were allegedly criminal?

<blockquote>C.    The Identities of the Unnamed Co-Conspirators Are Necessary for Mr. Wander's Defense.</blockquote>

As the government itself emphasizes, the "ultimate test" for a bill of particulars is necessity, not helpfulness. Opp. 8–9 (quoting *United States v. Mitlof*, 165 F. Supp. 2d 558, 569 (S.D.N.Y. 2001)). Here, the identities of Mr. Wander's alleged co-conspirators are necessary because the Indictment pleads its case largely through the hands of others, not Mr. Wander's. It attributes nearly every concrete act of the alleged fraud to "others acting at his direction": the analysts who transferred funds and account screenshots to Lender-1, Indictment ¶ 16; the analyst who digitally altered records, *id.* ¶ 17; the analysts directed to reassign already-pledged collateral before Lender-1's diligence visit, *id.* ¶ 18; the employees who prepared the allegedly false compliance reports, *id.* ¶ 12; and the unidentified "others" who carried out the alleged double pledging and falsifying of collateral, *id.* ¶¶ 1, 10, 11, 14. The government cannot build its case on the acts of unnamed agents but then deny the defendant their names. And there is no reason to withhold co-conspirator identities given that Mr. Wander is charged with white-collar offenses and poses no danger to anyone, and the related civil actions confirm there is no ongoing investigation to protect. *Savin*, 2001 WL 243533, at *5 ("There is no evidence of danger to co-conspirators, and, indeed, related civil actions concerning the same underlying events are being prosecuted without incident in this regard.").

## II.    THE COURT SHOULD ORDER DISCLOSURE OF THE FILTER PROCESS AND PRODUCTION OF THE LOVE INTERVIEW NOTES.

### A.    The Filter Team's Mishandling of Privileged Communications Warrants Disclosure of the Filter Process.

The government's admission on April 28, 2026, that it "inadvertently" produced "materials subject to a potential claim of privilege by 777 Partners" raises more questions than it answers. Opp. 24 (citing the government's letter). The government has not identified what materials are subject to this potential claim of privilege, the source of these materials, or how they were produced to Mr. Wander. If these materials were from Mr. Wander's inbox, as the government's opposition suggests, *see* Opp. 28, it does not explain why the production of these materials was "inadvertent" when the government claims it deliberately produced *all* materials that it had obtained from 777 Partners to the defendant—even those that may have been subject to a privilege claim by 777 Partners—in order to comply with its Rule 16 obligations and "avoid inadvertently withholding any *Brady* material." Opp. 30. Moreover, the government does not explain why it might have produced to Mr. Wander potentially privileged materials as to 777 Partners, when it claims that Mr. Wander lacks standing to assert the potential privilege claims of 777 Partners. Opp. 33. The government's position thus faces a dilemma of its own making. Either Mr. Wander shares 777 Partners' privilege—in which case he plainly has standing to seek information about the process for filtering those materials, *see infra* Point II.B—or he does not, in which case the government disclosed another party's potentially privileged materials to a stranger to that privilege, without that party's consent. In the latter case, the indiscriminate and unauthorized disclosure of potentially privileged materials—even for purportedly benign reasons—is nevertheless improper. *See United States v. Metter*, 860 F. Supp. 2d 205, 215 (E.D.N.Y. 2012) (rejecting the government's request "to release indiscriminately" privileged and otherwise private materials to co-defendants "without a predetermination of its privilege").

7

Disclosure of more information about the filter process is warranted to answer these fundamental questions.

To the extent Mr. Wander does not share 777 Partners' privilege, the government's own explanation establishes an intentional violation of 777 Partners' privilege. Against this backdrop, neither Mr. Wander nor this Court can take comfort in the government's *post hoc* assertions that the filter process protected Mr. Wander's privilege. The Court should order disclosure about the filter process so Mr. Wander can make an eyes-open determination about whether his rights were otherwise violated.

The government says it is only required to provide Mr. Wander information about the filter process if he shows that the investigative team already reviewed privileged materials—an impossible burden for a defendant who has no insight into the operations of the prosecution or filter team. And the government cites no case holding that its disclosure of privileged materials belonging to a party whose privilege the defendant may share authorizes the government to withhold information about the filter process from that defendant. Given the government's admissions, withholding basic information about the privilege process from him would be inconsistent with Judge Koeltl's instruction that filter procedures must "not only be fair but also appear to be fair." *United States v. Stewart*, No. 02 Cr. 395 JGK, 2002 WL 1300059, at *8 (S.D.N.Y. June 11, 2002).[2]

---

[2] Indeed, as the government itself recognizes, this Court has previously denied disclosure of "detailed information about the filter team review process," but only "at the pre-charge phase." *In re Search Warrants Executed on Apr. 28, 2021*, No. 21-MC-425 (JPO), 2021 WL 2188150, at *2 (S.D.N.Y. May 28, 2021). Here, by contrast, Mr. Wander has been charged and faces a very serious threat to his liberty.

**B.      Mr. Wander Has Standing To Request Information About the Filter Process.**

Notably, while the government now suggests that it purposely violated 777 Partners' privilege, it also takes the position that Mr. Wander lacks any standing to request information about the filter process that led to that violation.  But Mr. Wander does have standing.

*First*, the government never addresses Mr. Wander's independent point that, even if he did not have a joint defense agreement with 777 Partners during the relevant period, he has standing to request information about the filter protocol because his own privileged communications are subject to the very same protocol.  Mr. Wander has an interest in the integrity of the filter team's process of classifying, segregating, and releasing his privileged materials to ensure that his attorney-client privilege is protected.  Dkt. No. 39 ("Filter Mot.") 8.

*Second*, contrary to the government's representation, Opp. 35, Mr. Wander holds the privilege in these materials by virtue of his joint defense privilege with 777 Partners.  *See* Ex. 1 (Declaration of Thomas McKay ("McKay Decl.")) ¶ 4 ("During [the period from in or about April 2024 through in or about June 2024], I believed that Mr. Wander, Mr. Pasko, and the Company shared a common legal interest with regard to the Investigation.  I discussed this on several occasions with attorneys at Nelson Mullins [representing 777 Partners], who agreed.  We therefore shared privileged information and work product, and formulated a joint legal strategy as part of a common interest agreement.").  A joint defense agreement exists where "(1) there was an agreement between individuals, not necessarily in writing, embodying a cooperative and common enterprise towards an identical legal strategy; (2) the disputed communication was given in confidence and that the client reasonably understood it to be so given; and (3) a joint strategy among the individuals is apparent." *United States v. Ghavami*, 882 F. Supp. 2d 532, 538 (S.D.N.Y. 2012) (citation modified).  Those elements are satisfied here:  Mr. Wander, as co-

founder of 777 Partners, shared a common interest and an identical legal strategy with 777 Partners in defending against the types of claims raised in pending civil litigation and investigations against both. *See* Filter Mot. 2 (listing cases). "The invocation of the attorney-client privilege as extended by the joint defense agreement appears patently obvious when parties share a common interest and who anticipate the palpable likelihood of litigation against them." *Lugosch v. Congel*, 219 F.R.D. 220, 238 (N.D.N.Y. 2003).

The government is thus mistaken in arguing that because Mr. Wander was not a named party or was not represented by personal counsel prior to his resignation from 777 Partners, the contents of Mr. Wander's corporate inbox cannot be protected by the joint defense privilege. Opp. 35. The Second Circuit has made clear that it is "unnecessary that there be actual litigation in progress for the common interest rule of the attorney-client privilege to apply." *United States v. Schwimmer*, 892 F.2d 237, 244 (2d Cir. 1989) (citation modified). While Mr. Wander was employed by 777 Partners, he reasonably anticipated the civil suits that would be filed and accordingly entered into a joint defense agreement with 777 Partners to defend against them. That is sufficient to establish Mr. Wander's interest in the privileged materials.

### C.    Mr. Wander Need Not Prove an Intentional Intrusion to Obtain the Information That Would Reveal One.

Finally, the government puts the cart before the horse by claiming Mr. Wander's rights were not violated by the filter process here. *See* Opp. 36–38. Mr. Wander does not ask the Court to find a constitutional violation or to suppress evidence, disqualify the prosecution team, or order any other remedy, at this point. For now, he only seeks information to allow him to determine if such a violation occurred here. If that determination is made, he respectfully will request the opportunity to seek appropriate remedy.

10

**D.    The Love Interviews Independently Warrant Disclosure.**

The government's admissions of potential breaches of 777 Partners' privileges also require disclosure of notes from the government's interviews of Fred Love, or at least the steps the government took to protect privileged information.  The government fails to draw the obvious connection between its document production and its interviews of Mr. Love.  Opp. 39.  First, according to information provided by the government, it appears as though the filter team was not even set up when Mr. Love's interviews were conducted.  Opp. 22 (filter review in June 2025); *id.* 22 (Love interviews in 2024).  Second, if the government disclosed 777 Partners' privileged materials without consent, Mr. Wander must be able to determine if the government similarly violated that privilege in its interviews of Mr. Love.  That reasonable request is not a "transparent ploy for the early production of Jencks Act material."  Opp. 39.  The guardrails (if any) put in place by the government to protect against disclosure of privileged information are steps taken by the government, not statements by any witness—and thus fall outside the Jencks Act.  Disclosure of those guardrails is the only way Mr. Wander can confirm that the government took appropriate measures to protect potentially privileged information during the interviews of in-house counsel.  Given Mr. Wander's joint defense agreement with 777 Partners, McKay Decl. ¶ 4, he has standing to challenge any disclosure by Mr. Love based on the government's inadequate screening process.

## CONCLUSION

For the foregoing reasons, and those set forth in his opening briefs, Mr. Wander respectfully requests that the Court order the government to provide a bill of particulars, disclose its filter protocol and related documentation, and produce the notes of Mr. Love's interviews.

11

Dated:  June 26, 2026

Respectfully submitted,

*/s/ Jordan Estes*
Jordan Estes
Dani R. James
Michael Martinez
Samuel Raymond
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
T: (212) 351-4000
JEstes@gibsondunn.com
DJames@gibsondunn.com
MMartinez2@gibsondunn.com
SRaymond@gibsondunn.com

*Attorneys for Joshua Wander*

12