UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v-                                                    25-CR-473 (JPO)

JOSHUA WANDER,                                 MEMORANDUM AND ORDER
                               Defendant.

J. PAUL OETKEN, District Judge:

Defendant Joshua Wander is charged on a four-count indictment (ECF No. 1) arising out

of an alleged scheme to defraud private lenders and investors of 777 Partners, LLC ("777

Partners"), a private investment firm focused on alternative asset classes (ECF No. 24 at 7).  On

April 7, 2026, Wander moved for an evidentiary hearing on the ground that a member of the

prosecution team disclosed to press publications "matter[s] occurring before the grand jury" in

violation of Federal Rule of Criminal Procedure 6(e).  (*Id.* at 6-7.)  Fed. R. Crim. P. 6(e)(2)(B).

After the motion was fully briefed, the Court held oral argument on the matter on May 26, 2026.

For the reasons that follow, Wander's motion for an evidentiary hearing pursuant to Rule 6(e) is

denied.[1]

I.    **Legal Standard**

"[T]he proper functioning of [the American] grand jury system depends upon the secrecy

of grand jury proceedings."  *Douglas Oil Co. of California v. Petrol Stops Nw.*, 441 U.S. 211,

218 (1979).  Accordingly, Federal Rule of Criminal Procedure 6(e)(2) prohibits the disclosure of

---

[1] On May 4, 2026, Wander requested that the Court unseal the Government's opposition to
Wander's motion for an evidentiary hearing.  (ECF No. 29.)  The Court has carefully reviewed
the Government's unredacted opposition and finds that the redacted material is protected by the
deliberative process privilege and Rule 6(e).  Accordingly, Wander's request to unseal the
Government's opposition is denied.

1

any "matter occurring before a grand jury" by specific parties, including, in particular, "an attorney for the government." Fed. R. Crim. P. 6(e)(2)(B)(iv). Although a "matter occurring before a grand jury" is not formally defined, "[a]t its core, Rule 6(e)(2) protects from disclosure evidence that is actually presented to the grand jury," including "the identity of either grand jurors or expected witnesses; information about expected testimony of witnesses or likely questions; information that reveals the strategy or direction of a grand jury investigation (distinct from any outside investigations); or the date when a grand jury will return an indictment." *United States v. Skelos*, No. 15-CR-317, 2015 WL 6159326, at *9-10 (S.D.N.Y. Oct. 20, 2015).

Before a court may order an evidentiary hearing on an alleged grand jury leak, "the defendant must establish a prima facie case of a violation of Federal Rule of Criminal Procedure 6(e)." *United States v. Rioux*, 97 F.3d 648, 662 (2d Cir. 1996). To determine whether the defendant has made out a prima facie violation, "the court should examine, among other factors: (1) whether the media reports disclose matters occurring before the grand jury; (2) whether the media report discloses the source as one prohibited under Rule 6(e); and (3) evidence presented by the government to rebut allegations of a violation of Rule 6(e)." *Id.* "A prima facie showing of government attorneys leaking grand jury secrets may be substantiated with media reports containing evidence of the impermissible disclosure(s)." *United States v. Adams*, 755 F. Supp. 3d 519, 523 (S.D.N.Y. 2024).

## II.    Discussion

Wander argues that three articles—two by the news website *Semafor* and one by the soccer-focused publication *Josimar*—contain evidence that members of the prosecution team leaked grand jury information. (*See generally* ECF No. 24.) The first article, published in *Semafor* on November 30, 2023, named Nicolas Roos as the prosecutor "overseeing a Justice Department investigation into sports buyer 777 Partners" for violating U.S. money-laundering

laws, according to "people familiar with the matter." (ECF No. 25-8 at 3.)  The article also reported that the U.S. Attorney's Office for the Southern District of New York ("SDNY") was "discussing a joint investigation with law enforcement in Miami." (*Id.*)  The second article, published in *Semafor* on March 12, 2024, reported that "[p]rosecutors have interviewed current and former 777 employees," citing "people familiar with the matter." (ECF No. 25-19 at 3.)  And the third article, published in *Josimar* on November 18, 2024, revealed that "[c]riminal subpoenas have been sent to employees of both 777 Partners and A-CAP as part of a money laundering investigation by the US Department of Justice," according to "[m]ultiple sources with knowledge of the matter." (ECF No. 25-20 at 2.)  That article also stated that the probe was "a joint investigation by the Securities and Exchange Commission (SEC), FBI and Homeland Security," and named Nicolas Roos as the lead prosecutor.  (*Id.*)

Wander contends that these facts—the identity of the lead prosecutor, the statutory provisions under investigation, the joint nature of the investigation, and when grand jury subpoenas had been issued to which parties—"make[] clear that the source" of the leaks "was connected to the prosecution." (ECF No. 24 at 22-23.)  But these factual snippets cannot bear the weight that Wander seeks to place on them.  As a threshold matter, the Government attests that at the time of the first *Semafor* article, "no grand jury subpoenas had been issued, no witnesses had testified before the grand jury, and no grand jury proceedings had occurred." (ECF No. 28 at 4.)  By definition, therefore, the first article cannot have revealed "matters occurring before a grand jury." *Rioux*, 97 F.3d at 662.  Separate and apart from this fatal defect, many of the key statements in the first *Semafor* article relied upon by Wander as evidence of an improper disclosure are factually incorrect.  There was no discussion, for example, of a joint investigation between SDNY and Miami law enforcement. (ECF No. 28-1 ¶ 8(c).)  The grand

jury subpoena that was eventually issued in February 2024 did not include money laundering as one of the statutes under investigation.  (ECF No. 28 at 27.)  Nor had Roos been assigned to the case, or indeed a criminal investigation administratively opened into 777 Partners, when *Semafor* contacted SDNY before publishing the article.  (*Id.* at 11.)

The defense's argument fares no better with respect to the second and third articles.  Even assuming *arguendo* that the information contained in these articles qualifies as "matters occurring before a grand jury"—a conclusion that is itself altogether uncertain[2]—the articles by no means compel the conclusion that a government attorney was the source of the leak.  None of the articles referred to members of the prosecution team, or law enforcement more generally, as sources.  Nor were the facts that Wander points to as incriminating—including the name of the lead prosecutor, the fact that interviews had taken place and subpoenas issued, and the joint nature of the investigation—uniquely within the purview of the prosecution team.  Anyone interviewed by the prosecution team may well have been apprised of Roos's role, the joint nature of the investigation, and of course, the fact of the interview itself.  (*See* ECF No. 28 at 25.)  And by the time *Josimar* article was published in November 2024, the Government had already served a substantial number of subpoenas, which would have significantly widened the circle of individuals who knew and could have leaked any of these facts.  (ECF No. 28 at 23-25; ECF No. 28-1 ¶ 13.)  Put simply, "neither the article's attribution of sources—unspecified 'people familiar

---

[2] Wander asserts that the second and third articles, which revealed the name of the lead prosecutor and the fact that prosecutors had interviewed and issued criminal subpoenas to some employees of 777 Partners, contain grand jury material.  (*See* ECF No. 30 at 9.)  But the mere fact that some employees of 777 Partners had been interviewed and served with subpoenas, absent identifying information or additional detail, does not "reveal some secret aspect of the inner workings of the grand jury" such that the protections of Rule 6(e) are clearly triggered.  *Skelos*, 2015 WL 6159326, at *9 (quotation marks omitted).  In any event, because Wander has not shown that the Government is the likely source of any informational leaks, the Court need not rule on whether the articles include grand jury material.

with the [matter]'—nor its substance sufficiently points to the government." *United States v. Blaszczak*, No. 17-CR-357, 2018 WL 1322192, at *6 (S.D.N.Y. Mar. 12, 2018).

Meanwhile, the Government has submitted sworn declarations from each of the prosecutors and agents assigned to the investigation, all of which categorically deny disclosing grand jury material to the press.  (*See* ECF No. 28-1 ¶ 1; ECF No. 28-9 ¶ 1; ECF No. 28-10 ¶ 1.) "In the Second Circuit, such statements are accorded significant weight." *Adams*, 755 F. Supp. 3d at 531; *see also United States v. Skelos*, No. 15-CR-317, 2018 WL 2849712, at *5 (S.D.N.Y. June 8, 2018) ("Relying on such a government affidavit is particularly appropriate where the source of the information in a news article is not 'definite.'"), *aff'd*, 988 F.3d 645 (2d Cir. 2021); *Rioux*, 97 F.3d at 662 (concluding that the district court acted within its discretion in finding no prima facie violation of Rule 6(e) where the government had submitted affidavits denying it was the source, even though the source of the leak was "likely" a government official).  Wander retorts that the declarations are "incomplete" for not including additional SDNY personnel, such as "the SDNY public affairs office that interfaced with *Semafor* or any member of the FBI." (ECF No. 30 at 6.)  But no such fishing expedition is warranted where Wander has not made out a prima facie violation of Rule 6(e) in the first instance.  In short, because the three articles relied on by Wander do not raise a specter of unlawful disclosure of grand jury material by a member of the prosecution team, Wander has not established that an evidentiary hearing is warranted.

## III.    Conclusion

For the foregoing reasons, Wander's motion for an evidentiary hearing is denied.  The Clerk of Court is directed to close the motions at Docket Numbers 24 and 29.

SO ORDERED.

Dated: June 30, 2026
        New York, New York

_____
        J. PAUL OETKEN
        United States District Judge

5