# GIBSON DUNN

Jordan Estes
Partner
T: +1 212.351.3906
jestes@gibsondunn.com

July 13, 2026

**BY ECF**

The Honorable J. Paul Oetken
United States District Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

**Re:**   *United States v. Wander*, 25 Cr. 473 (JPO)

Dear Judge Oetken:

We represent Joshua Wander and write respectfully to request an adjournment of the trial currently scheduled to begin on October 19, 2026, to January 2027 or later, together with a corresponding adjournment of the pretrial motion schedule and related deadlines. Three developments—each of the government's own making—have made effective preparation on the current schedule impossible. *First*, on June 30, 2026, the government filed a superseding indictment that adds two new counts and substantially reframes its theory of the case. *Second*, the government has produced an enormous volume of discovery—exceeding 1.6 million documents and 7 million pages—with productions as recent as June 30. *Third*, months after producing documents to Mr. Wander, the government now demands that he either waive his attorney-client privilege or produce, on an abbreviated timeline, a privilege log covering the complete image of his cell phone—more than 327,000 individual text messages spanning years. This is Mr. Wander's first request for an adjournment. We have conferred with the government, which objects to this request.

## I.     The Superseding Indictment Adds New Charges and Reframes the Government's Theory Less Than Four Months Before Trial.

On June 30, 2026—less than sixteen weeks before jury selection—the government filed a superseding indictment adding two new counts: Count Five, charging wire fraud on "Lender-4," a lender not previously named, and Count Six, charging witness tampering while on bail. The superseding indictment also upends the government's theory of the case.

The theory of the original indictment, in the government's own telling, grew out of two civil lawsuits brought by Leadenhall Capital Partners LLP and ING Capital LLC (Lenders-1 and -3) against 777 Partners and Mr. Wander. *E.g.*, Dkt. Nos. 33 at 3 ("The Civil Actions contain substantively similar allegations to those appearing in the Indictment."); 44 at 10 (opposing a bill of particulars because Mr. Wander could review the "allegations raised in related civil actions"). Leadenhall, in turn, has alleged—in evocative terms—that Lender-4, Advantage Capital Holdings LLC ("A-CAP"), "was the puppeteer behind the 777 Partners marionette," and it sued

# GIBSON DUNN

A-CAP alongside Mr. Wander and 777 Partners for fraud, among other claims. *Leadenhall Capital Partners LLP v. Wander*, No. 24-cv-3453 (S.D.N.Y. May 3, 2024), Dkt. No. 1 ¶ 20.

The superseding indictment changes gears. A-CAP, the government now alleges, was not the puppeteer, as Leadenhall still claims—it was Mr. Wander's *victim*, the subject of a brand-new wire fraud count. Superseding Indictment ¶¶ 27–30.

The government's theory and the claims of its lead victim are now squarely at odds. In the midst of drafting and filing trial motions and meeting the other trial deadlines that the Court ordered before the government sought the superseder, Mr. Wander needs time to consider how this dramatic shift affects his defense, and to investigate and meet charges and allegations that did not exist two weeks ago. He also needs time to decide whether to file substantive motions with respect to the new charges. The Court should grant an adjournment to give him that time. *E.g.*, *United States v. Gloss*, 2009 WL 161063, at *3 (S.D.N.Y. Jan. 21, 2009) (granting continuance following superseding indictment); *United States v. Rojas-Contreras*, 474 U.S. 231, 240–41 (1985) (Blackmun, J., concurring) ("To avoid prejudicing a defendant, a continuance should be granted where there is a meaningful possibility that a superseding indictment will require an alteration or adjustment in the planned defense.").

## II.    The Volume of Discovery Independently Warrants Additional Time.

Discovery in this case has been extraordinary by any measure. Since its first production on November 5, 2025, the government has made rolling productions—in November 2025 and in January, March, and June 2026—most recently on June 30, 2026, the same day it filed the superseding indictment. Those productions now total more than 1.6 million documents, comprising more than 7 million pages drawn from more than a dozen custodians. The defense has been reviewing these materials continuously since November, but no amount of diligence can compress meaningful review of a record of this size into the fifteen weeks remaining before trial, alongside the briefing of pretrial motions. *See United States v. Felipe*, 1996 WL 18985, at *1 (S.D.N.Y. Jan. 18, 1996) ("[t]he nature and extent of the charges, and the amount of discovery in the case . . . fully warrant an adjournment of the trial date").

Judge Castel recently granted an adjournment on a similar record. In *United States v. Chu*, No. 25-cr-579 (S.D.N.Y. Dec. 15, 2025), the indictment was unsealed on December 17, 2025, and trial was scheduled for October 19, 2026—the same trial date as here. Dkt. Nos. 3, 35. After the government filed a superseding indictment on June 24, 2026, while continuing to produce voluminous discovery, the defendant sought an adjournment, *id.*, Dkt. Nos. 76, 84 at 4, which Judge Castel granted, *id.*, Dkt. No. 86 (adjourning trial to January 25, 2027). Mr. Wander seeks the same relief on the same grounds.

# GIBSON DUNN

**III.    The First-Instance Privilege Review the Government Now Demands Cannot Be Completed on the Current Schedule.**

Finally, the government has recently sprung a new demand on Mr. Wander. When it produced discovery following Mr. Wander's arrest in late 2025, the government never asked him to provide a privilege log of any material.[1] Beginning in June 2026, however, the government began demanding a log of any potentially privileged material it had produced to Mr. Wander from his cell phone (the "Wander Phone") as soon as possible, warning that failure to provide one would be deemed a waiver of applicable privileges—all while refusing to provide any information about its own filter-team process.[2] Again, the government's demand for a privilege log relates to materials *it produced*, not materials that Mr. Wander produced.

The government's demand is unjustified. *See United States v. Guan*, 2026 WL 1760138, at *1 (S.D.N.Y. June 18, 2026) (denying the government's request to order the defendant to provide a privilege log given the absence of "convincing authority that such an order is proper"). But in the interest of fair and orderly discovery, and consistent with his obligations, Mr. Wander continues to confer with the government about whether and how a privilege log might be produced. Any such log, however, would be an enormous undertaking—because of the government's own production choices.

On November 5, 2025, the government produced to Mr. Wander the Cellebrite extraction of the Wander Phone as a single raw image under a single Bates number (SDNY_01_0001886), with *no distinction* between the materials the government's filter team screened out as potentially privileged and everything else.[3] Defense counsel was required to retain an e-discovery vendor to process the raw image into reviewable form—a time-consuming undertaking that yielded more than 327,000 individual text messages. Then, by letter dated June 12, 2026, the government demanded that Mr. Wander assert any privilege claim over materials on the phone by June 25— thirteen days later. Because the government produced the image undifferentiated, that demand would require the defense to conduct a first-instance privilege review of the *entire* extraction— applying search terms to the raw image and reviewing the many thousands of resulting messages—all for materials the government produced *to* Mr. Wander, not the reverse. And although the government produced a new raw image of the Wander Phone on July 2 with the potentially privileged materials removed, it has still never produced the only thing that matters:

---

[1] As Mr. Wander has made clear, as to certain of the materials, the government did not even alert him that a filter team had performed a review. Dkt. 39 at 3.

[2] In its November 5, 2025 production letter transmitting Mr. Wander's cell phone, the government stated: "A filter team at the United States Attorney's Office removed potentially privileged materials from the Wander Phone, and segregated them from the case team. ***We are providing you with the entire extraction from the Wander Phone, including any potentially privileged materials*** to which the case team does not have access." Dkt. 40-1 (November 5, 2025 Government Production Letter) at 2 n.2 (emphasis added). The letter did not ask Mr. Wander to provide a privilege log.

[3] *See* Dkt. 40-1 (November 5, 2025 Government Production Letter) at 2 n.2.

# GIBSON DUNN

the potentially privileged materials as a standalone. On July 10, the government said it would discuss and consider whether it could produce these materials, but did not commit to doing so. With the current productions, the only way for Mr. Wander to identify what the filter team withheld is to cross-check the July 2 image against the complete phone, message by message. It is unfair to demand that arduous review, belatedly, fifteen weeks before trial.  And even if the government were to now produce the potentially privileged materials, the impending trial would make review impossible in light of the other deadlines.

Judge Torres recently granted an adjournment in just this posture.  In *United States v. James*, No. 26-cr-29 (S.D.N.Y. Apr. 12, 2026), the government "gave counsel for [the defendant] less than two weeks to review [approximately 100,000 documents] for privilege" but had "not produced any privilege log to [the defendant]," which the defendant argued was an obstacle to the timely preparation of pretrial motions. Dkt. No. 44 at 7. Judge Torres granted the adjournment. *See id.*, Dkt. No. 49. The burden at this point—a first-instance review of a 327,000-message phone extraction, atop continuing review of a 1.6-million-document record—far exceeds the burden in *James*.

In short, the government's production decisions have shifted onto the defense a first-instance privilege review that the government itself has refused to describe or facilitate. Completing that review, conferring with the government, and presenting any disputes to the Court—whether through a privilege log or *in camera* review—cannot responsibly be accomplished by October 19, while the defense simultaneously reviews ongoing discovery and prepares to meet the new charges. Adequate time is necessary both to protect the privilege interests at stake and to permit the defense to prepare effectively for trial.

**GIBSON DUNN**

**IV.    Conclusion**

For the foregoing reasons, Mr. Wander respectfully requests that the Court adjourn the trial to January 2027, or such other date as is convenient for the Court, and that the Court reset the pretrial motion schedule and related deadlines accordingly. Mr. Wander consents to the exclusion of time through the new trial date.

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: /s/ *Jordan Estes*
Jordan Estes
Dani R. James
Michael Martinez
Samuel Raymond
200 Park Avenue
New York, New York 10166
(212) 351-4000
*Counsel for Defendant Joshua Wander*

cc:    All counsel of record (by ECF)