UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

*v.*

JOSHUA WANDER,

*Defendant*.

**No. S1 25 Cr. 473 (JPO)**

**DEFENDANT JOSHUA WANDER'S MOTION TO DISMISS COUNT SIX OF THE SUPERSEDING INDICTMENT**

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .......... 1

STATEMENT OF FACTS .......... 2

LEGAL STANDARD .......... 5

ARGUMENT .......... 8

I. COUNT SIX SHOULD BE DISMISSED. .......... 8

A. Count Six Fails To State an Offense. .......... 8

B. Venue Is Improper as to Count Six. .......... 15

II. IN THE ALTERNATIVE, THE COURT SHOULD STRIKE THE PHRASES "USED INTIMIDATION" AND "THREATENED" AS SURPLUSAGE FROM COUNT SIX. .......... 20

CONCLUSION .......... 21

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abouammo v. United States*, 146 S. Ct. 1571 (2026)....................2, 16, 17, 19, 20

*Arthur Andersen LLP v. United States*, 544 U.S. 696 (2005) ....................1, 2, 9, 10, 11, 12

*Counterman v. Colorado*, 600 U.S. 66 (2023)....................15

*Fischer v. United States*, 603 U.S. 480 (2024)....................12, 13

*Hamling v. United States*, 418 U.S. 87 (1974)....................6

*Hughey v. United States*, 495 U.S. 411 (1990)....................15

*Johnson v. United States*, 576 U.S. 591 (2015)....................6

*Kolender v. Lawson*, 461 U.S. 352 (1983)....................6, 14

*McDonnell v. United States*, 579 U.S. 550 (2016)....................14

*United States v. Abrams*, 539 F. Supp. 378 (S.D.N.Y. 1982)....................18

*United States v. Alfonso*, 143 F.3d 772 (2d Cir. 1998)....................6, 8, 18

*United States v. Cabrales*, 524 U.S. 1 (1998)....................16

*United States v. Davis*, 588 U.S. 445 (2019)....................15

*United States v. Doss*, 630 F.3d 1181 (9th Cir. 2011), *as amended on reh'g in part* (9th Cir. Mar. 15, 2011)....................11, 12, 13, 15

*United States v. Edwards*, 869 F.3d 490 (7th Cir. 2017)....................12

*United States v. Farrell*, 126 F.3d 484 (3d Cir. 1997)....................10, 12, 13, 15

*United States v. Gotti*, 459 F.3d 296 (2d Cir. 2006)....................11

*United States v. Hansen*, 599 U.S. 762 (2023)....................7, 15

*United States v. Hayden*, No. 20-40585, 2022 WL 73049 (5th Cir. Jan. 7, 2022)....................20

*United States v. King*, 762 F.2d 232 (2d Cir. 1985)....................9

*United States v. Malachowski*, 604 F. Supp. 2d 512 (N.D.N.Y. 2009), *aff'd*, 415 F. App'x 307 (2d Cir. 2011)....21

*United States v. Mathis*, 932 F.3d 242 (4th Cir. 2019)....17

*United States v. Miller*, 605 F. Supp. 3d 63 (D.D.C. 2022)....18

*United States v. Mulder*, 273 F.3d 91 (2d Cir. 2001)....7, 20

*United States v. Poindexter*, 951 F.2d 369 (D.C. Cir. 1991)....14

*United States v. Ramirez*, 420 F.3d 134 (2d Cir. 2005)....19

*United States v. Rodriguez-Moreno*, 526 U.S. 275 (1999)....19, 20

*United States v. Scarpa*, 913 F.2d 993 (2d Cir. 1990)....20

*United States v. Shotts*, 145 F.3d 1289 (11th Cir. 1998)....12

*United States v. Thompson*, 76 F.3d 442 (2d Cir. 1996)....11, 12, 14, 15

*United States v. Trie*, 21 F. Supp. 2d 7 (D.D.C. 1998)....20

*United States v. Vega*, 184 F. App'x 236 (3d Cir. 2006)....13, 15

*United States v. Veliz*, 800 F.3d 63 (2d Cir. 2015)....9, 10

*United States v. Washington*, 947 F. Supp. 87 (S.D.N.Y. 1996)....8, 20

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489 (1982)....6, 7, 14

*VIP of Berlin, LLC v. Town of Berlin*, 593 F.3d 179 (2d Cir. 2010)....6

**Constitutional Provisions**

U.S. Const. art. III, § 2, cl. 3....7, 16

U.S. Const. amend. VI....7, 16, 20

**Statutes**

18 U.S.C. § 1512(b)....1, 2, 3, 5, 8, 9, 10, 11, 12, 13, 17, 19

18 U.S.C. § 1512(c)....18

18 U.S.C. § 1512(f)....17

18 U.S.C. § 1512(i) ........ 5, 18, 19, 20

18 U.S.C. § 1519 ........ 16

18 U.S.C. § 3147(1) ........ 5

**Rules**

Fed. R. Crim. P. 7(d) ........ 7, 20

Fed. R. Crim. P. 12(b)(3) ........ 5, 7

Fed. R. Crim. P. 18 ........ 7

**Other Authorities**

Fed. R. Crim. P. 7(d) advisory committee's note ........ 7

## PRELIMINARY STATEMENT

Count Six charges Joshua Wander with a thirty-year felony for asking an old friend to dinner. According to the government, when that friend ("Analyst-2") declined, Mr. Wander allegedly said Analyst-2 would likely have to testify at his trial and that his livelihood was in Analyst-2's hands. The government alleges Mr. Wander then sent a photograph of himself and his infant son, after which Analyst-2 stopped taking his calls. Nothing further is alleged to have come of this exchange. That is the entirety of the government's witness tampering charge.

The Superseding Indictment does not allege that Mr. Wander asked Analyst-2 to do anything at all with respect to the trial—not to testify falsely, not to withhold testimony, not to invoke a privilege. It identifies no threat, no demand, no inducement, and no relationship of authority between two longtime friends. And this is not a case in which the Court must only accept the pleading on its face. In its bail filings the government set out its own account of what was said on the calls and submitted the messages themselves, and it has identified nothing else to support the charge. For purposes of this motion only, Mr. Wander accepts the government's account of the calls as true. The Court can read precisely what the government alleged was said and look past the labels in the pleading's charging paragraph. Those allegations do not meet the elements of witness tampering, and do not establish that any such tampering occurred in this District.

*First*, Count Six fails to state an offense. Section 1512(b)(1) reaches intimidation, threats, misleading conduct, and corrupt persuasion, each when done knowingly. There was no intimidation and no threat. The misleading-conduct theory fails on the pleading's own terms, because the only alleged false statement is one the Superseding Indictment elsewhere alleges Analyst-2 knew to be false. And the government alleges nothing to show that Mr. Wander acted knowingly—that is, conscious of his own wrongdoing, *Arthur Andersen LLP v. United States*,

544 U.S. 696, 705–06 (2005)—or that he employed any wrongful means that would make a sympathy appeal through a baby picture "corrupt."

*Second*, venue does not lie in this District. The Superseding Indictment says nothing about where Mr. Wander or Analyst-2 were located when the relevant communications took place, and the government has indicated in correspondence that venue is based on the pending proceeding in this District. But weeks before the Superseding Indictment was issued, the Supreme Court held that venue for a closely related obstruction offense lies where the prohibited conduct occurs, not where the proceeding it was meant to affect is pending. *Abouammo v. United States*, 146 S. Ct. 1571 (2026). The same analysis governs Section 1512(b)(1), whose essential conduct elements are the acts of intimidation, threat, corrupt persuasion, and misleading conduct. Neither the Superseding Indictment nor anything the government has provided identifies one such act in this District. Trying Mr. Wander here would deny him his constitutional right to be tried in the district where the "crime shall have been committed."

The Court should dismiss Count Six. In the alternative, the Court should strike from the Superseding Indictment unsupported and inflammatory language suggesting Mr. Wander intimidated or threatened Analyst-2.

## STATEMENT OF FACTS

As the Court knows, in October 2025, a grand jury returned an indictment against Mr. Wander, charging him with wire fraud, conspiracy to commit wire fraud, securities fraud, and conspiracy to commit securities fraud, in connection with his business at 777 Partners. ECF No. 1 (Indictment). The Indictment alleged, *inter alia*, that Mr. Wander directed his employees to prepare false bank statements that were sent to a lender of 777 Partners. Indictment ¶¶ 16–17; *see also* Superseding Indictment ¶¶ 16–17. After his arrest, Mr. Wander was subject to pre-trial supervision.

On June 3, 2026, the government moved to modify Mr. Wander's conditions of pre-trial release, alleging that even though his bond imposed no limitations on his ability to contact prospective witnesses, Mr. Wander had made efforts to "influence" the anticipated testimony of a potential witness. ECF No. 42 at 2. The government did so without first informing Mr. Wander's counsel of his alleged conduct. The government based its motion on communications between Mr. Wander and a person identified as "Witness-1" in that motion and "Analyst-2" in the Superseding Indictment. According to the government, at some undefined point, Mr. Wander suggested to Analyst-2 that another person had directed the preparation of false bank statements. The government focused particularly on alleged statements from Mr. Wander that Mr. Wander's "livelihood" was in Analyst-2's hands, and that Mr. Wander then sent a photograph of Mr. Wander and his infant son looking into the camera. The government set out its account of what was said on the calls, submitted excerpts of the messages to the Court, and produced other messages between Mr. Wander and Analyst-2, which Mr. Wander filed with the Court in his response. ECF No. 43. The government has never suggested that it possesses evidence of witness tampering beyond the conduct described in its bail modification letter and the messages submitted to this Court. Its bail motion described the May 2026 call and messages as the conduct warranting modified conditions. ECF No. 42 at 2. In his response, Mr. Wander explained the context of those communications and stated that he had no objection to a condition barring him from contacting Analyst-2 outside the presence of counsel. ECF No. 43 at 1–3.

While that motion was pending, the grand jury returned a superseding indictment, charging Mr. Wander with an additional count of wire fraud (Count Five) and one count of witness tampering under 18 U.S.C. § 1512(b)(1) (Count Six). ECF No. 50 (Superseding Indictment). In support of Count Six, the Superseding Indictment alleges the following:

- approximately one week after the Indictment was returned in October 2025, Mr. Wander contacted Analyst-2 and directed Analyst-2 to download an encrypted messaging application and enable its automatic deletion setting, Superseding Indictment ¶ 32;
- over the following months, Mr. Wander repeatedly communicated with Analyst-2 via the application, *id.*;
- in certain calls and messages, Mr. Wander allegedly raised matters related to his criminal case, including by allegedly falsely suggesting to Analyst-2 that it was not Mr. Wander, but another individual at 777 Partners, who had directed the preparation of false bank statements, *id.*;
- during a call in May 2026, Mr. Wander asked to have dinner with Analyst-2 in New York; when Analyst-2 declined the invitation, Mr. Wander allegedly stated that Analyst-2 would likely have to testify at Mr. Wander's upcoming criminal trial and that Mr. Wander's "livelihood" was "in [Analyst-2's] hands," *id.* ¶ 33;
- moments later, Mr. Wander allegedly sent Analyst-2 a photograph of Mr. Wander and his infant son looking directly into the camera*, id.*;
- after sending the photo, Mr. Wander continued to contact Analyst-2 via the encrypted messaging application but Analyst-2 did not accept Mr. Wander's calls. *Id.*

The Superseding Indictment asserts that this conduct is witness tampering, in that Mr. Wander "knowingly used intimidation, threatened, and corruptly persuaded another person, and

attempted to do so, and engaged in misleading conduct toward another person, with intent to influence, delay, and prevent the testimony of a person in an official proceeding." *Id.* ¶ 47.[1]

On August 13, 2026, Mr. Wander's counsel wrote the government to request particulars about Count Six: the physical location of Analyst-2 at all times described in the charges related to alleged witness tampering, and more broadly, the basis for venue for Count Six of the Superseding Indictment. Estes Decl. Ex. 1. On August 17, the government responded, refusing to provide any particulars but directing Mr. Wander's counsel to 18 U.S.C. § 1512(i). Estes Decl. Ex. 2.

Count Six tracks the same communications the government submitted with its bail motion. For purposes of this motion only, Mr. Wander does not dispute the government's description of what was said on relevant calls.[2] The government's account of the calls appears in its motion to modify Mr. Wander's conditions of release, ECF No. 42 at 2, and the underlying messages are attached to Mr. Wander's opposition to that motion. ECF Nos. 43-1, 43-2, 43-3, 43-4, 43-5. Together, they are the whole of what the government says happened.

## LEGAL STANDARD

Federal Rule of Criminal Procedure 12(b)(3) requires that a defendant raise by pretrial motion "a defect in the indictment," including the "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B). An indictment must do more than invoke the label of a crime: it must "contain[] the elements of the offense charged," "fairly inform[] a defendant of the charge against which he must defend," and "enable[] him to plead an acquittal or conviction in bar of

[1] While the statutory maximum for witness tampering is 20 years, 18 U.S.C. § 1512(b), the Superseding Indictment includes the additional enhancement of 10 years for committing an offense while on bail, 18 U.S.C. § 3147(1).

[2] Mr. Wander accepts the allegations in the Superseding Indictment and in the government's proffer in support of the bail modification motion as true solely for purposes of this motion. He disputes those allegations, reserves all rights to contest them at trial and otherwise, and nothing in this memorandum is or should be construed as an admission of any fact or of the government's characterization of any communication.

future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974); *accord United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998). Where a count fails any of these requirements, it is defective and must be dismissed. In assessing such a challenge, the Court accepts the indictment's well-pleaded allegations as true and asks whether, even so, the count is legally sufficient as charged. Ordinarily the Court does not weigh the sufficiency of the government's evidence on a pretrial motion to dismiss. But where "the government has made what can fairly be described as a full proffer of the evidence it intends to present at trial," the Court may consider that evidence in resolving a motion to dismiss. *Alfonso*, 143 F.3d at 776–77. The exception applies with particular force where, as here, the government has itself placed the relevant evidence before the Court and has identified no other evidence.

A criminal statute violates the Due Process Clause if it does not "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited," or if it "encourage[s] arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983); *see Johnson v. United States*, 576 U.S. 591, 595 (2015). Where the challenged provision is applied to expression, that inquiry is more demanding: "perhaps the most important factor affecting the clarity that the Constitution demands of a law is whether it threatens to inhibit the exercise of constitutionally protected rights," and "if . . . the law interferes with the right of free speech . . . , a more stringent vagueness test should apply." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982); *accord VIP of Berlin, LLC v. Town of Berlin*, 593 F.3d 179, 188 (2d Cir. 2010) (statute reaching protected speech is held to a higher level of specificity than one that does not). The heightened standard exists to ensure that ambiguity at the statute's margins does not chill protected speech by "prohibit[ing] a substantial amount of protected speech relative to its plainly legitimate

sweep." *United States v. Hansen*, 599 U.S. 762, 770 (2023). Constitutional avoidance also bears on the construction of a statute that reaches speech. Where one reading of a criminal statute would raise substantial First Amendment concerns and another would not, an interpreting court should adopt the latter. *Id.* at 770–81 (construing a statute narrowly to avoid overbreadth concerns); *Vill. of Hoffman Ests.*, 455 U.S. at 494–95.

The Constitution twice guarantees that a defendant will be tried where his crime was committed. Article III requires that "[t]he Trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed." U.S. Const. art. III, § 2, cl. 3. The Sixth Amendment guarantees trial "by an impartial jury of the State and district wherein the crime shall have been committed." U.S. Const. amend. VI. Rule 18 codifies the same command, and a defendant may move before trial to dismiss a count laid in the wrong district. Fed. R. Crim. P. 12(b)(3)(A)(i), 18.

"Upon the defendant's motion, the court may strike surplusage from the indictment or information." Fed. R. Crim. P. 7(d). "This rule introduces a means of protecting the defendant against immaterial or irrelevant allegations in an indictment or information, which may, however, be prejudicial." Fed. R. Crim. P. 7(d) advisory committee's note. "Motions to strike surplusage from an indictment will be granted only where the challenged allegations are not relevant to the crime charged and are inflammatory and prejudicial." *United States v. Mulder*, 273 F.3d 91, 99 (2d Cir. 2001). "When a charging paragraph of an indictment, which presents the matter upon which the grand jury based its accusations against a defendant, contains surplusage that adds nothing to the charges, gives the defendant no further information with respect to them, and creates the danger that the prosecutor at trial may impermissibly enlarge the charges contained in

the Indictment returned by the grand jury, the language must be stricken." *United States v. Washington*, 947 F. Supp. 87, 90 (S.D.N.Y. 1996) (internal quotation marks omitted).

## ARGUMENT

### I. COUNT SIX SHOULD BE DISMISSED.

#### A. Count Six Fails To State an Offense.

The government has already put its case for Count Six before the Court. In support of its bail motion the government gave its own account of what was said on the calls and submitted certain messages; Mr. Wander produced the remainder of the exchange in response; and the government has identified nothing else. ECF Nos. 42 at 2, 43-1, 43-2, 43-3, 43-4, 43-5. That information is apparently the "full proffer of the evidence [the government] intends to present at trial." *Alfonso*, 143 F.3d at 776. Because Mr. Wander accepts the government's account as true for purposes of this motion only, the Court can thus consider not only the Superseding Indictment but also the sufficiency of the government's evidence.

The conduct alleged in the Superseding Indictment and the government's evidence does not meet the elements of the witness tampering statute. Section 1512(b)(1) of Title 18 imposes criminal liability on anyone who "knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to influence, delay, or prevent the testimony of any person in an official proceeding." On the government's own proffer, Mr. Wander did none of those things, and in no event did he do them knowingly.

##### 1. The Superseding Indictment Fails To Allege Mr. Wander Used Intimidation, Threatened, or Engaged in Misleading Conduct Toward Analyst-2.

The Superseding Indictment contains no allegation that Mr. Wander "used intimidation" against Analyst-2 or "threatened" Analyst-2. Its misleading-conduct theory fails on the face of

the pleading. The only false statement alleged is Mr. Wander's suggestion to Analyst-2 "that it was not WANDER, but another individual at 777 Partners, who had directed the preparation of false bank statements." Superseding Indictment ¶ 32. But the Superseding Indictment elsewhere alleges that Analyst-2 knew that story to be false. *See id.* ¶ 29.a (in March 2022, Mr. Wander directed Analyst-2 to "digitally alter[] the screenshot of the bank account statement, changing the date from March 16 to March 17, and sen[d] the screenshot back to WANDER."); *see also id.* ¶ 16 ("At WANDER's direction, the Analysts transferred the funds, took the screenshots, and later transmitted the fraudulent account screenshots to Lender-1."). A participant in the events Mr. Wander is alleged to have described in the May 2026 call cannot have been misled by that description. *See United States v. King*, 762 F.2d 232, 237 (2d Cir. 1985) (holding that "misleading conduct" prong of Section 1512(b) does not reach a situation where one conspirator suborns another to lie by telling a story both conspirators know is false).

### 2. The Superseding Indictment Fails To Allege Mr. Wander Acted Knowingly.

That leaves only "corruptly persuades." The Superseding Indictment recites that Mr. Wander acted "knowingly," Superseding Indictment ¶ 47, but in this case where a full proffer of the evidence has been offered, *see* ECF No. 42, this recitation is not sufficient. Nothing the government has offered supplies facts from which the Court could find that Mr. Wander knew his conduct was wrong.

"Persuasion" is "by itself innocuous." *Arthur Andersen*, 544 U.S. at 703. "Knowingly" modifies "corruptly persuades," and the two must be read together: "[o]nly persons conscious of wrongdoing can be said to 'knowingly . . . corruptly persuad[e].'" *Id.* at 706. That limitation is what restricts Section 1512(b)'s reach to "only those with the level of culpability we usually require in order to impose criminal liability." *Id.* at 706–07 (citation omitted); *see also United*

*States v. Veliz*, 800 F.3d 63, 71 n.6 (2d Cir. 2015) (acknowledging that Section 1512 "extends only to persuaders conscious of their wrongdoing" (citation modified)). As the Supreme Court made clear in *Arthur Andersen*, a specific intent to "subvert, undermine, or impede" governmental fact-finding is insufficient to sustain a Section 1512(b) conviction. 544 U.S. at 706–07.

But there is nothing to suggest that any of Mr. Wander's alleged conduct was done with the consciousness of wrongdoing required by *Arthur Andersen*. The closest the Superseding Indictment comes to alleging Mr. Wander's state of mind is the charging paragraph's bare labels—that he acted "knowingly," "with intent to influence," and with "the purpose of influencing Analyst-2's testimony." Superseding Indictment ¶ 47. An intent to influence is not consciousness of wrongdoing. A defendant who hopes a witness will not testify against him has a self-interested purpose; that says nothing about whether he knew what he was doing was wrong.

"'[P]ersuad[ing]' a person 'with intent to . . . cause' that person to 'withhold' testimony or documents from a Government proceeding or Government official is not inherently malign." *Arthur Andersen*, 544 U.S. at 703–04; *see also United States v. Farrell*, 126 F.3d 484, 487 (3d Cir. 1997) (explaining that "'corruptly persuades' . . . cannot mean simply 'persuades with the intent to hinder communication to law enforcement' because such an interpretation would render the word 'corruptly' meaningless"). Courts have accordingly held that it is not witness tampering to ask a coconspirator, non-coercively, to exercise a privilege that he or she independently holds. *See, e.g.*, *Farrell,* 126 F.3d at 488 (witness tampering under the "corruptly persuades" clause "does not include a noncoercive attempt to persuade a coconspirator who enjoys a Fifth Amendment right not to disclose self-incriminating information about the

conspiracy to refrain, in accordance with that right, from volunteering information to investigators"); *United States v. Doss*, 630 F.3d 1181, 1190 (9th Cir. 2011), *as amended on reh'g in part* (9th Cir. Mar. 15, 2011) (reversing conviction on witness tampering charge where the defendant "appealed to his wife to exercise her marital privilege not to testify against him," because his wife "had the legal option not to testify, and thus [the defendant]'s request, without more, was insufficient to establish 'corrupt' as opposed to innocent persuasion"). Mr. Wander did not even do that. He is not alleged to have asked Analyst-2 to invoke any privilege, to withhold any testimony, or to say anything at all. If asking a witness to exercise a right he holds is not corrupt persuasion, then asking a witness for nothing cannot be.[3]

On the government's own proffer, then, the whole of the charged conduct is a dinner invitation, a remark about the stakes of testimony, and a family photograph. Nothing in it indicates the consciousness of wrongdoing that *Arthur Andersen* requires. 544 U.S. at 706. Without that, Count Six fails to state an offense.

### 3. The Superseding Indictment Fails To Allege Mr. Wander Acted Corruptly.

Knowledge is not the only requirement the Superseding Indictment fails to satisfy. Section 1512(b) reaches only persuasion that is "corrupt[]," and the two requirements work together. Consciousness of wrongdoing presupposes an underlying wrong. That is why *Arthur*

[3] The Second Circuit's decision in *United States v. Gotti*, 459 F.3d 296 (2d Cir. 2006), is not to the contrary. The persuasion there bore consciousness of wrongdoing on its face. The defendant issued a "command" to a potential witness's stepfather "over whom he had authority under the hierarchical structure of the Gambino Family" to invoke the Fifth Amendment. *Id.* at 343. Nothing of the sort is alleged here. The Superseding Indictment describes communications between longtime friends, and alleges no relationship of authority, no leverage, and no consequence for refusal—indeed, it alleges that Analyst-2 declined the dinner invitation and simply stopped taking Mr. Wander's calls. Superseding Indictment ¶ 33. Additionally, *Gotti* did not even address *Arthur Andersen*, did not discuss the consciousness-of-wrongdoing requirement, and simply applied the standard of *United States v. Thompson*, described further below, which predated *Arthur Andersen* and located culpability in the defendant's motive without requiring proof that he understood his conduct to be wrongful. That is the precise defect the Supreme Court identified in the *Arthur Andersen* instructions, which permitted conviction "even if [the defendant] honestly and sincerely believed that its conduct was lawful." 544 U.S. at 706.

*Andersen* began by observing that persuasion is "by itself innocuous," 544 U.S. at 703, before turning to *mens rea.* Where the means of persuasion are lawful and non-coercive, there is nothing whose wrongfulness a defendant could have appreciated.

The Second Circuit has construed "corruptly" to mean persuasion "motivated by an improper purpose." *United States v. Thompson*, 76 F.3d 442, 452 (2d Cir. 1996). Under that reading, the only thing a defendant must appreciate is his own self-interest. Sister circuits, recognizing that witness tampering should be limited to conduct that is "inherently wrong or immoral" like bribery or attempting to persuade a witness to lie, have rejected *Thompson*, and questioned whether the decision survives *Arthur Andersen*. *See Doss*, 630 F.3d at 1189–90 (declining to follow *Thompson* and *United States v. Shotts*, 145 F.3d 1289 (11th Cir. 1998), in favor of the Third Circuit's interpretation from *Farrell* as "the most consistent with the Supreme Court's later analysis of § 1512 in *Arthur Andersen*"); *United States v. Edwards*, 869 F.3d 490, 499 n.3 (7th Cir. 2017) ("*Thompson* and *Shotts* predate *Arthur Andersen*, and while the Supreme Court did not expressly disapprove them, it is difficult to square their looser 'improper purpose' standard with the *Arthur Andersen* emphasis on conscious wrongdoing and dishonesty."). Although this Court is bound by *Thompson*, Mr. Wander respectfully contends that *Thompson*'s interpretation of Section 1512 is inconsistent with the Supreme Court's subsequent decision in *Arthur Andersen*, and that the correct interpretation of the statute is that corruption lies in the means of persuasion, not solely in the persuader's purpose.

The Second Circuit's approach in *Thompson* swallows the other terms in Section 1512(b), rendering them disfavored surplusage. *See Fischer v. United States*, 603 U.S. 480, 496 (2024) ("[S]urplusage is nonetheless disfavored, and our construction that creates substantially less of it is better than a construction that creates substantially more." (internal quotation marks and

citation omitted)). For example, making a threat toward a witness would violate Section 1512(b) both as a threat and as corrupt persuasion. Defining "corruptly" to refer to "independent wrongful means" preserves the meaning of each term in Section 1512(b)'s list of proscribed activities and is consistent with the ordinary canons of statutory construction. Each companion term of "corruptly persuades"—"uses intimidation" and "threatens"—denotes an independently wrongful means of tampering with a witness's testimony. *See id.* at 487 ("[A] word is given more precise content by the neighboring words with which it is associated" and "avoids ascribing to one word a meaning so broad that it is inconsistent with the company it keeps." (quotation modified)). Applying the canon of *noscitur a sociis*, "corruptly persuades" must be read to share that quality: a wrongful *means* of persuasion, not merely a self-interested purpose behind otherwise-lawful persuasion. *See United States v. Vega*, 184 F. App'x 236, 242 (3d Cir. 2006) ("The defendant must go beyond simple advocacy of a lawful course of action and either exert some form of wrongful coercive pressure, such as offering a bribe or employing misrepresentations, or request that the person engage in illegal conduct.").

Under that appropriate test, recognized by the Third Circuit in *Farrell* and the Ninth Circuit in *Doss*, among others, it would not have been "corrupt" for Mr. Wander to discuss his case with Analyst-2, or even to have "falsely suggest[ed]" what the government alleges he suggested, because the Superseding Indictment does not allege that he directed or asked Analyst-2 to testify falsely about it. The photograph he is alleged to have sent was, on the government's own account, an appeal to sympathy rather than a coercive attempt to interfere with testimony. Whatever else it may be, sending a photograph of one's own child is not inherently malign in the way that paying a bribe or soliciting false testimony is.[4]

[4] The other allegations about Mr. Wander's conduct are even further afield: his direction that Analyst-2 download an encrypted messaging application and enable auto-delete was not corrupt, since the Superseding Indictment does not

The canon of constitutional avoidance similarly counsels the narrower wrongful-means construction to avoid serious vagueness and First Amendment problems. "Reading 'corruptly' to prohibit one from influencing another to act 'immorally' or 'improperly' provides no more guidance than does reading it to prohibit one from acting 'immorally' or 'improperly' oneself." *United States v. Poindexter*, 951 F.2d 369, 378 (D.C. Cir. 1991) ("Vague terms do not suddenly become clear when they are defined by reference to other vague terms." (citation omitted)). "Words like 'depraved,' 'evil,' 'immoral,' 'wicked,' and 'improper' are no more specific—indeed they may be less specific—than 'corrupt.'" *Id*. at 379. Construing "corruptly persuades" by reference to the equally vague term of "improper purpose," as *Thompson* does, does not provide the "sufficient definiteness that ordinary people can understand what conduct is prohibited." *Kolender*, 461 U.S. at 357.

The constitutional concern is heightened by the fact that all the alleged conduct in the Superseding Indictment is speech: Mr. Wander allegedly "suggesting" a false narrative to Analyst-2, telling Analyst-2 that Mr. Wander's "livelihood" was "in [Analyst-2's] hands," and sending a photograph of himself and his baby. Superseding Indictment ¶¶ 32–33. If a "law interferes with the right of free speech . . . a more stringent vagueness test should apply." *Vill. of Hoffman Ests.*, 455 U.S. at 499. The narrower "wrongful means" construction, by contrast, avoids this "vagueness shoal." *McDonnell v. United States*, 579 U.S. 550, 576 (2016).

The definition of "corruptly persuade" from *Thompson* also raises substantial First Amendment concerns, because it makes the criminality of pure speech turn on nothing but the speaker's purpose. Under the Second Circuit's apparent definition, for example, a sincere

allege that Analyst-2 was subject to a subpoena, a preservation obligation, or any other legal duty to retain communications with Mr. Wander, and predates the alleged May 2026 conversations by roughly seven months. Superseding Indictment ¶¶ 31–33.

sympathy appeal that leaves the witness free to testify truthfully would be rendered unprotected merely because the defendant self-interestedly hoped the witness would not testify. Relying on "bad purpose" alone to criminalize non-coercive, non-fraudulent, and non-threatening persuasion sits in serious tension with the First Amendment—a concern the Supreme Court has repeatedly addressed by rejecting liability standards that sweep in protected expression along with unprotected. *See Counterman v. Colorado*, 600 U.S. 66, 75–78 (2023) (requiring a subjective *mens rea* for true threats because a purely objective standard may chill protected speech); *Hansen*, 599 U.S. at 769–81. The narrower construction avoids that tension.

Finally, to the extent ambiguity remains after these tools are exhausted, the rule of lenity requires the narrower, defendant-favoring construction. *See United States v. Davis*, 588 U.S. 445, 464–65 (2019); *Hughey v. United States*, 495 U.S. 411, 422 (1990). Here, that counsels in favor of *Farrell* and *Doss*, not *Thompson*. *See Vega*, 184 F. App'x at 242 ("It is not enough that the defendant merely advises a coconspirator to exercise his or her constitutional right to remain silent, even if the defendant acts with the 'improper purpose' of hindering a pending criminal investigation.").

Based on the foregoing canons of statutory construction, and contrary to the Second Circuit's interpretation in *Thompson*, the term "corruptly persuades" requires that the defendant use an independently wrongful means of persuasion, not merely that he act with an improper purpose. Because Mr. Wander's alleged conduct did not involve independently wrongful means of persuasion, the Superseding Indictment fails to state an offense, and Count Six should be dismissed on this ground as well. Mr. Wander preserves the issue for appeal.

**B. Venue Is Improper as to Count Six.**

The government also brought Count Six in the wrong district. Weeks before the government sought the Superseding Indictment, the Supreme Court reaffirmed that the

Constitution requires a court to identify the "essential conduct" elements of the statute of conviction in order to determine where venue lies, and held that for a closely related obstruction statute, venue is proper only where the proscribed conduct occurs—not where the proceeding it was meant to affect is located. *Abouammo v. United States*, 146 S. Ct. 1571, 1576, 1579 (2026). Neither the Superseding Indictment, nor the government's response to Mr. Wander's letter request, nor its discovery identifies any act of intimidation, threat, corrupt persuasion, or misleading conduct occurring in this District. The government's sole stated basis for venue is that Mr. Wander's trial is pending here. The Constitution forecloses that basis, and Count Six should be dismissed for that reason as well.

The Constitution is clear: "The Trial of all Crimes" shall "be held in the State where the said Crimes shall have been committed." U.S. Const. art. III, § 2, cl. 3. The Sixth Amendment further entitles criminal defendants to a jury "of the State and district wherein the crime shall have been committed." U.S. Const. amend. VI. The Supreme Court has repeatedly commented on the critical importance of venue to the Founders. *See, e.g.*, *United States v. Cabrales*, 524 U.S. 1, 6 (1998) (noting that the Constitution "twice safeguards the defendant's venue right"); *Abouammo*, 146 S. Ct. at 1576. In order to determine the proper venue for a federal crime, "courts generally must determine the location of the offense's 'essential conduct elements.'" *Id.* Courts look to the language of the applicable statute, and the "prohibited act" or acts listed. *Id.* at 1576–77.

In *Abouammo*, the Supreme Court analyzed 18 U.S.C. § 1519. That statute imposes liability upon anyone who:

> knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or

> agency of the United States or any case filed under title 11, or in relation to or contemplation of any such matter or case[.]

The Supreme Court held that, based on the plain language of the statute, "[t]he only prohibited act in that statute is the falsification of a document. Once a person has committed that act (with the requisite intent), he need do nothing more to violate the law. . . . [T]he crime is complete upon falsification." 146 S. Ct. at 1577.

Witness tampering is no different. Section 1512(b)(1) criminalizes anyone who "knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to [] influence, delay, or prevent the testimony of any person in an official proceeding." 18 U.S.C. § 1512(b)(1). The plain text of the statute is clear: a defendant violates the statute the moment he performs any of the enumerated acts with the requisite intent. Nothing further need occur. The witness need not be persuaded. No testimony need be altered, delayed, or prevented; indeed, no testimony need ever be given. *See United States v. Mathis*, 932 F.3d 242, 261 (4th Cir. 2019) ("Section 1512 does not require that the government prove the completion of an underlying federal offense to establish witness tampering."). Congress made the point explicit: "an official proceeding need not be pending or about to be instituted at the time of the offense." 18 U.S.C. § 1512(f)(1). A proceeding that need not exist when the offense is committed cannot be part of the conduct that commits it, which confirms that the proceeding's location is not the locus of the crime. The statute also reaches bare "attempts to do so." 18 U.S.C. § 1512(b). The alleged offense is therefore completed before anything happens in the District where the official proceeding is pending, and so "no 'conduct constituting the offense' happened" here. 146 S. Ct. at 1579.[5]

---

[5] That the statute speaks of intent to "influence, delay, or prevent" testimony changes nothing. 18 U.S.C. § 1512(b)(1). *Abouammo* holds that a statute's *mens rea* cannot supply venue: "This Court has never looked to a statute's *mens rea* elements in considering venue. Nor would it make much sense to do so." 146 S. Ct. at 1577.

The Superseding Indictment fails to allege anything about the whereabouts of Mr. Wander or Analyst-2 during the relevant conduct listed. Nor does the government's evidence described in the bail modification motion or in the appended messages supply any basis to conclude that either man was in this District when the communications occurred. There is nothing in the discovery to suggest that Analyst-2 was present in this District, and when Mr. Wander asked where Analyst-2 was located, the government refused to answer. For venue to lie here, the government would have to establish that Mr. Wander or Analyst-2 was in this District during one of the charged communications. Nothing in its proffer does so. And because that proffer is complete, *see supra* Section I.A, the Court need not defer the question to trial. *See Alfonso*, 143 F.3d at 776. The government may respond that its indictment need only "track[] the statutory language of the offense, identif[y] the relevant time period and conduct, and allege[] that the criminal conduct occurred in this District," Estes Decl. Ex. 2 at 1, but courts have held that the obstruction statutes require more detail about the alleged conduct. *See United States v. Miller*, 605 F. Supp. 3d 63, 69 (D.D.C. 2022) (Section 1512(c) "is so broad and general that its terms, without more, fail to inform a reasonable person of the essential conduct at issue," so that an indictment is inadequate if it "merely echo[es] that language"); *United States v. Abrams*, 539 F. Supp. 378, 385–86 (S.D.N.Y. 1982) (requiring factual specificity for obstruction charge). Instead, the government "alert[ed]" Mr. Wander to the venue provision in Section 1512, Estes Decl. Ex. 2 at 1, which provides that prosecutions under Section 1512 "may be brought in the district in which the official proceeding (whether or not pending or about to be instituted) was intended to be affected or in the district in which the conduct constituting the alleged offense occurred." 18 U.S.C. § 1512(i).

Section 1512(i) does not change the analysis. The provision states that a prosecution "may be brought" in one of two districts. It does not purport to define where a Section 1512 offense is committed, and it leaves the elements of Section 1512(b) untouched. Congress may write an offense so that conduct within a district is an element, and venue then follows the elements it has written. What it may not do is leave the elements alone and declare a defendant triable where none of them occurred. The essential conduct test is grounded in the Constitution. *United States v. Ramirez*, 420 F.3d 134, 144 (2d Cir. 2005) ("The Sixth Amendment speaks in terms of the district where a crime is 'committed,' and as the Supreme Court has repeatedly emphasized, the 'locus delicti . . . must be determined from the nature of the crime alleged and the location of the act or acts constituting it.'" (citing *United States v. Rodriguez-Moreno*, 526 U.S. 275, 279 (1999))). The essential conduct elements of the witness tampering statute are wholly focused on the alleged corrupt persuasion, and thus the Constitution requires that any such charge be brought in the district where that conduct occurred. In *Abouammo*, the Supreme Court specifically reserved the issue of whether Section 1512's venue provision was consistent with the Constitution. 146 S. Ct. at 1577 n.3 ("Nothing we say today is meant to address that statutorily created venue scheme."). While the Court did state that "we have sometimes suggested that Congress's view of appropriate venue . . . may make a difference to the analysis," the Court also recognized the obvious point that "the venue rule is constitutional, and Congress lacks the power to finally decide what it means or when it is violated." *Id.*

Mr. Wander is a Florida resident, and the only connection between these communications and this District is the case pending here. Haling him into this Court on that basis would deny

him his right to be tried in the district where the "crime shall have been committed."[6] *See* U.S. Const. amend. VI. Count Six should accordingly be dismissed for improper venue.

## II. IN THE ALTERNATIVE, THE COURT SHOULD STRIKE THE PHRASES "USED INTIMIDATION" AND "THREATENED" AS SURPLUSAGE FROM COUNT SIX.

The charging paragraph for Count Six of the Superseding Indictment alleges that Mr. Wander "knowingly used intimidation, threatened, *and* corruptly persuaded another person, and attempted to do so, and engaged in misleading conduct toward another person, with intent to influence, delay, and prevent the testimony of a person in an official proceeding." Superseding Indictment ¶ 47 (emphasis added). The Superseding Indictment, however, contains no factual allegations to support the charge that Mr. Wander "used intimidation" or "threatened" anyone. Those terms should be struck.

The standard governing Rule 7(d) is exacting, and surplusage is rarely stricken. *See United States v. Scarpa*, 913 F.2d 993, 1013 (2d Cir. 1990); *Mulder*, 273 F.3d at 99. But here there is absolutely no suggestion that there is any "evidence of the allegation" that Mr. Wander intimidated or threatened Analyst-2, let alone that such evidence is "admissible and relevant to the charge." *Scarpa*, 913 F.2d at 1013. Those terms create precisely the danger Rule 7(d) exists to prevent: "When a charging paragraph . . . contains surplusage that 'adds nothing to the charges, gives the defendant no further information with respect to them, and creates the danger that the prosecutor at trial may impermissibly enlarge the charges contained in the Indictment returned by the grand jury,' the language must be stricken." *Washington*, 947 F. Supp. at 90.

---

[6] Mr. Wander is aware of one decision upholding Section 1512(i) against a similar constitutional challenge. *See United States v. Trie*, 21 F. Supp. 2d 7, 18 (D.D.C. 1998). *Trie* predates not only *Abouammo* but *Rodriguez-Moreno*, and rests on the premise *Abouammo* rejected—that an obstruction offense may be located where its intended effects would be felt. No Court of Appeals appears to have reached the question. *See also United States v. Hayden*, No. 20-40585, 2022 WL 73049, at *3 (5th Cir. Jan. 7, 2022) (noting that "neither we nor our sister circuits have addressed [the] constitutional issue," and that "there may be a facial difference between what the constitutional provisions require and the words of section 1512(i)," but resolving the appeal on plain-error grounds).

The prejudice from leaving the language in place is concrete. "Intimidation" and "threatened" are terms of unambiguous culpability. Their presence in the charging paragraph, unsupported by any factual allegation, invites the jury to infer that Mr. Wander did something beyond what the government has actually alleged—and to import into a nonviolent white-collar case the connotations that witness intimidation carries in ordinary usage. *See United States v. Malachowski*, 604 F. Supp. 2d 512, 519 (N.D.N.Y. 2009), *aff'd*, 415 F. App'x 307 (2d Cir. 2011) (striking indictment language that "[might] compel some jurors to infer that defendant" had intended to commit another offense). Sending a photograph of one's own child is an act a jury must interpret; "intimidation" and "threat" are not. Leaving those words in the charging paragraph, unsupported, unfairly buttresses the government's theory that Mr. Wander engaged in conduct that may constitute witness tampering.

## CONCLUSION

For the foregoing reasons, Count Six of the Superseding Indictment should be dismissed for failure to state an offense and for improper venue. In the alternative, the Court should strike the phrases "used intimidation" and "threatened" from paragraph 47 of the Superseding Indictment.

Dated: September 1, 2026

Respectfully submitted,

*/s/ Jordan Estes*
Jordan Estes
Dani R. James
Michael Martinez
Samuel Raymond
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
T: (212) 351-4000
JEstes@gibsondunn.com
DJames@gibsondunn.com
MMartinez2@gibsondunn.com
SRaymond@gibsondunn.com

*Attorneys for Joshua Wander*