UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

JOSHUA WANDER,

Defendant.

**S1 25 Cr. 473 (JPO)**

**THE GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANT'S MOTIONS *IN LIMINE* AND MOTION TO DISMISS COUNT SIX**

JAMES M. MCDONALD
United States Attorney
Southern District of New York
26 Federal Plaza
New York, New York 10278

Thomas S. Burnett
Marguerite B. Colson
Alexandra N. Rothman
Assistant United States Attorneys
- *Of Counsel* -

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ............ iii

PRELIMINARY STATEMENT ............ 1

ARGUMENT ............ 1

I. The Court Should Deny the Defendant's Motions *In Limine* ............ 1

A. The Court Should Not Restrict the Government's Questioning of Its Cooperating Witnesses ............ 1

B. The Court Should Exclude Wander's Proffered Evidence Regarding 777's Lenders ............ 4

C. The Court Should Exclude Wander's Proffered Evidence Regarding A-CAP ............ 7

D. Government Exhibits 10A and 10B Are Admissible ............ 9

E. Evidence of Wander's Spending Is Admissible ............ 11

II. The Court Should Deny the Defendant's Motion to Dismiss Count Six ............ 12

A. Applicable Law ............ 12

1. Motions to Dismiss ............ 12

2. Surplusage ............ 14

B. Count Six Properly Alleges Witness Tampering ............ 15

C. Count Six Properly Alleges Venue ............ 18

D. The Court Should Deny the Motion to Strike Language from the Indictment ............ 19

CONCLUSION ............ 20

# TABLE OF AUTHORITIES

Page(s)

Cases

*Abouammo v. United States*,
146 S. Ct. 1571 (2026) ........ 18, 19

*Arthur Andersen LLP v. United States*,
544 U.S. 696 (2005) ........ 17

*Cameron v. City of New York*,
598 F.3d 50 (2d Cir. 2010) ........ 2

*Costello v. United States*,
350 U.S. 359 (1956) ........ 13

*In re Rezulin Prods. Liab. Litig.*,
309 F. Supp. 2d 531 (S.D.N.Y. 2004) ........ 11

*Inoa v. Smith*,
No. 16 Civ. 2708 (VEC) (JLC), 2018 WL 4110908 (S.D.N.Y. Aug. 29, 2018), report and recommendation adopted, No. 16 Civ. 2708 (VEC) (JLC), 2019 WL 549019 (S.D.N.Y. Feb. 9, 2019). ........ 2

*Kousisis v. United States*,
605 U.S. 114 (2025) ........ 5, 8

*New York ex rel. Spitzer v. Saint Francis Hosp.*,
94 F. Supp. 2d 423 (S.D.N.Y. 2000) ........ 3

*Old Chief v. United States*,
519 U.S. 172 (1997) ........ 3

*Saldarriaga v. United States*,
No. 99 Civ. 4487 (WK), 2002 WL 449651 (S.D.N.Y. Mar. 21, 2002) ........ 9

*United States v. Agostini*,
280 F. Supp. 2d 260 (S.D.N.Y. 2003) ........ 8

*United States v. Alfonso*,
143 F.3d 772 (2d Cir. 1998) ........ 16

*United States v. Bankman-Fried*,
680 F. Supp. 3d 289 (S.D.N.Y. 2023) .......... 13

*United States v. Bin Laden*,
91 F. Supp. 2d 600 (S.D.N.Y. 2000) .......... 14

*United States v. Butler*,
351 F. Supp. 121 (S.D.N.Y. 2004) .......... 15

*United States v. Carboni*,
204 F.3d 39 (2d Cir. 2000) .......... 10, 11

*United States v. Coffey*,
361 F. Supp. 2d 102 (E.D.N.Y. 2005) .......... 14

*United States v. Daidone*,
471 F.3d 371 (2d Cir. 2006) .......... 18

*United States v. Daugerdas*,
837 F.3d 212 (2d Cir. 2016) .......... 13, 19

*United States v. Dawkins*,
999 F.3d 767 (2d Cir. 2021) .......... 13, 16

*United States v. Fakih*,
264 F. App'x 78 (2d Cir. 2008) .......... 18

*United States v. Garcia*,
413 F.3d 201 (2d Cir. 2005) .......... 2

*United States v. Gotti*,
459 F.3d 296 (2d Cir. 2006) .......... 17

*United States v. Hild.*,
No. 19 Cr. 602 (RA) (S.D.N.Y. Apr. 14, 2021) .......... 1

*United States v. Johnson*,
529 F.3d 493 (2d Cir. 2008) .......... 2

*United States v. Juwa*,
508 F.3d 694 (2d Cir. 2007) .......... 13

*United States v. Kallen-Zury*,
629 F. App'x 894 (11th Cir. 2015) .......... 3

*United States v. Litvak*,
889 F.3d 56 (2d Cir. 2018) .................................................................................... 5, 8

*United States v. Malachowski,*
604 F. Supp. 2d 512 (N.D.N.Y. 2009)........................................................................ 20

*United States v. Massino*,
546 F.3d 123 (2d Cir. 2008) ...................................................................................... 3

*United States v. Maxwell*,
534 F. Supp. 3d 299 (S.D.N.Y. 2021) .................................................................. 14, 15

*United States v. Middendorf*,
No. 18 Cr. 36 (JPO) (S.D.N.Y. Feb. 19, 2019) ......................................................... 1

*United States v. Milton*,
No. 21 Cr. 478 (ER), 2021 WL 5304328 (S.D.N.Y. Nov. 15, 2021) ........................ 14

*United States v. Mostafa*,
965 F. Supp. 2d 451 (S.D.N.Y. 2013) ..................................................................... 15

*United States v. Mulder*,
273 F.3d 91 (2d Cir. 2001) ................................................................................. 14, 15

*United States v. Ohle*,
678 F. Supp. 2d 215 (S.D.N.Y. 2010) ............................................................ 13, 14, 18

*United States v. Percoco*,
No. 16 Cr. 776 (VEC), 2017 WL 6314146 (S.D.N.Y. Dec. 11, 2017)....................... 14

*United States v. Perez*,
575 F.3d 164 (2d Cir. 2009) ..................................................................................... 15

*United States v. Peterson*,
357 F. Supp. 2d 748 (S.D.N.Y. 2005) ..................................................................... 13

*United States v. Price*,
443 F. App'x 576 (2d Cir. 2011) ............................................................................. 17

*United States v. Quattrone*,
441 F.3d 153 (2d Cir. 2006) ..................................................................................... 19

*United States v. Quinones*,
511 F.3d 289 (2d Cir. 2007) ..................................................................................... 10

*United States v. Scarpa*,
913 F.2d 993 (2d Cir. 1990) ........ 14

*United States v. Smith*,
985 F. Supp. 2d 547 (S.D.N.Y. 2014) ........ 15

*United States v. Stein*,
429 F. Supp. 2d 633 (S.D.N.Y. 2006) ........ 14

*United States v. Thompson,*
76 F.3d 442 (2d Cir. 1996) ........ 17

*United States v. Torres*,
No. 20 Cr. 608 (DLC), 2021 WL 1947503 (S.D.N.Y. May 13, 2021) ........ 12

*United States v. Vargas*,
702 F. Supp. 70 (S.D.N.Y. 1998) ........11

*United States v. Velastegui*,
199 F.3d 590 (2d Cir. 1999) ........ 13

*United States v. Walters*,
910 F.3d 11 (2d Cir. 2018) ........ 13

*United States v. Wedd*,
993 F.3d 104 (2d Cir. 2021) ........ 12, 13, 16

*United States v. White*, No.,
17 Cr. 611 ........ 1

*Universal Health Servs. v. United States ex rel. Escobar*,
579 U.S. 176 (2016) ........ 6

*Williams v. Herbert*,
435 F. Supp. 2d 199 (W.D.N.Y. 2006) ........ 2

Statutes

18 U.S.C. § 1512(b) ........ 22

Rules

Fed. R. Crim. P. 7(c)(1) ........ 16

Fed. R. Crim. P. 12(b)(3)(A)(i) ........................................................................................ 17

Fed. R. Evid. 104 .........................................................................................................11

Fed. R. Evid. 602 ......................................................................................................... 7

Fed. R. Evid. 607 ......................................................................................................... 8

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum in opposition to the defendant Joshua Wander's motions *in limine*, Dkt. 71 ("MIL"), and motion to dismiss Count Six of the Indictment, Dkt. 68 ("MTD"). For the reasons set forth below, the motions should be denied.

## ARGUMENT

### I. The Court Should Deny the Defendant's Motions *In Limine*

#### A. The Court Should Not Restrict the Government's Questioning of Its Cooperating Witnesses

The defendant first seeks to preclude the Government from asking its cooperating witnesses a series of questions that witnesses are routinely allowed to answer. MIL 2-4. From white-collar to racketeering trials, prosecutors frequently ask their cooperating witnesses, in sum and substance, whether they committed any crimes and, if so, whether the defendant participated in those crimes with them.[1] These questions are helpful to the jury and entirely proper. There is no basis to restrict the Government from asking similar questions here.

In asking the Court to break from all the other Judges who have allowed the Government to pose these sorts of questions, the defendant argues that the questions the Government plans to

---

[1] There are too many instances of this practice to provide the Court with a comprehensive list. Below are a few examples, which should be familiar to defense counsel from their time serving as prosecutors. *See, e.g.*, *United States v. Middendorf*, No. 18 Cr. 36 (JPO) (S.D.N.Y. Feb. 19, 2019) (Trial Tr. 695-96) (asking cooperating witness "have you pled guilty to crimes in connection with the conduct you have just described," "[w]hat crimes have you pled guilty to?" and "[d]id you commit these crimes alone or with other people?" before identifying the defendant as part of the "core group" who committed crimes); *United States v. Hild*, No. 19 Cr. 602 (RA) (S.D.N.Y. Apr. 14, 2021) (Trial Tr. 50-51) (asking cooperating witness "[w]hat crimes have you pled guilty to?," "[w]hat did you do to make you guilty of those crimes," [d]id you do that alone or did you do it with other people?," "[d]o you see anyone in the courtroom who participated in that conduct with you?," and "[w]ho do you see?" before identifying defendant); *United States v. White*, No. 17 Cr. 611 (RWS) (S.D.N.Y. Oct. 3, 2018) (Tr. 111-14) (asking cooperating witness "[d]id you commit any crimes when you were in YGz?," "[w]hat sort of crimes?" and "do you see anybody in the courtroom today who is a member of these gangs with you?" before identifying defendant).

ask are improper leading questions. But none of the questions identified by the defense in their motion are leading questions. As just one example, the question "did you commit crimes" is not a leading question, because the question does not suggest the answer. *See Inoa v. Smith*, No. 16 Civ. 2708 (VEC) (JLC), 2018 WL 4110908, at *31 (S.D.N.Y. Aug. 29, 2018), *report and recommendation adopted*, No. 16 Civ. 2708 (VEC) (JLC), 2019 WL 549019 (S.D.N.Y. Feb. 9, 2019) (holding "[t]he test of a leading question is whether the question suggests the answer"); *see also Williams v. Herbert*, 435 F. Supp. 2d 199, 212 (W.D.N.Y. 2006) (holding "[d]id you warn him again about killing someone?" "falls short of . . . leading"). The defense suggests this question is leading because a cooperating witness almost always will answer "yes" to the question. However, that outcome is a feature of the witness having committed crimes—which explains the reason they are cooperating with the Government—and not that of a leading question.

The defense also argues that this line of questioning elicits improper legal conclusions. This argument fares no better. The cases cited by the defense are far afield and involve situations, unlike this one, where witnesses who lacked personal knowledge of the defendant's crimes were asked to opine on the ultimate legal issues in the case. *See United States v. Johnson*, 529 F.3d 493, 499 (2d Cir. 2008) (DEA agent without personal knowledge testified "defendant was guilty, and even at times made direct assertions about the defendant's drug dealings as if [the agent] had witnessed them himself"); *United States v. Garcia*, 413 F.3d 201, 210 (2d Cir. 2005) (DEA agent without personal knowledge testified defendant was partner in cocaine distribution operation); *see also Cameron v. City of New York*, 598 F.3d 50, 65 (2d Cir. 2010) (court erred in allowing prosecutors and police lieutenant to "give their opinions" on arresting officers "credibility" and "whether probable cause existed" in false arrest and malicious prosecution case). Here, by contrast, the Government intends to ask the defendant's co-conspirators about matters over which they have

direct personal knowledge, namely, the defendant's participation in the charged crimes with them. *See* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."); *New York ex rel. Spitzer v. Saint Francis Hosp.*, 94 F. Supp. 2d 423, 425 (S.D.N.Y. 2000) ("[a] witness's conclusions based on personal observations over time may constitute personal knowledge").[2]

The defense also cites the Eleventh Circuit's decision in *United States v. Kallen-Zury*, 629 F. App'x 894, 908 (11th Cir. 2015), to argue it is improper for a cooperator to identify an individual with whom he committed crimes. MIL 5. But *Kallen-Zury* has never been cited for this holding in the more than decade since it was decided. And *Kallen-Zury* itself cites *United States v. Massino*, 546 F.3d 123, 130 (2d Cir. 2008), a Second Circuit decision where the Government asked a cooperating witness an entirely different question, namely, if he thought anyone who was charged with a crime was guilty. *Id.* at 130. Thus, *Kallen-Zury* appears to have been wrongly decided, and in any event, it is not binding on this court.

The Court should also deny the defendant's request to prevent any in-court identification. MIL 4. The defendant may be willing to stipulate to identity, but subject to narrow exceptions that do not apply, the "prosecution is entitled to prove its case by evidence of its own choice" and "a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it." *Old Chief v. United States*, 519 U.S. 172, 186-87 (1997). The defendant has not articulated any risk of unfair prejudice that arises from an in-court identification, particularly where he is not contesting identity. To be sure, the Government does not intend to have every witness who could identify the defendant actually do so in court. But the

[2] Admission of this testimony is also a useful predicate for the Government to move for admission of certain statements as co-conspirator statements under Rule 801(d)(2)(E), which is the subject of a pending motion *in limine*. Dkt. 69 at 20-28.

Government should not be precluded from doing what is standard in nearly every federal criminal trial because Wander would prefer not to be identified by his co-conspirators.

**B. The Court Should Exclude Wander's Proffered Evidence Regarding 777's Lenders**

The Court should deny the defendant's request to introduce evidence that lenders were "aware that 777 periodically experienced shortfalls" on lending facilities and "permitted 777 to use funds in ways that were technically inconsistent with their agreements with 777." MIL 4. The defendant has not identified the universe of evidence he intends to offer on this point, but the documents he has presented are of minimal relevance and present a high risk of confusing or misleading the jury, without time-consuming mini trials on each of the episodes.

The defendant has not made a sufficient proffer of the evidence he intends to offer, or his specific theory of admissibility. The defendant claims that certain, unspecified "[e]vidence of the lenders' conduct . . . bears on the credibility of certain anticipated trial testimony." MIL 6. But whether any evidence is admissible for such a purpose depends on the specific witness and the specific document. For example, the defendant has cited several communications between Wander and a former Leadenhall employee who was no longer at Leadenhall by the time of the crime, and who will not be testifying at trial. *See* Estes Decl. Exs. 2-4. The defendant cannot attack the credibility of Leadenhall trial witnesses using the communications of a different person, simply because they once worked for the same company. *See* Fed. R. Evid. 607 (allowing impeachment to attack "the *witness's* credibility" (emphasis added)).

Separately, the defendant—without offering many specifics—alludes to times when lenders knew about collateral shortfalls or allowed 777 to use funds in ways not permitted by their credit agreements, claiming that evidence is relevant to intent or materiality. MIL 4-7. Without the facts, however, it is impossible to assess whether that claim is correct. If the defendant, for instance,

was not involved in a particular example, it will likely not be relevant to his mental state. And whether a particular authorization was, in fact, in violation of a credit agreement will turn on the specific facts of that authorization. This Court should not give blanket permission to the defense to introduce evidence of the lenders' conduct without these critical details.

The facts the defendant has proffered show that the evidence he seeks to introduce has minimal relevance. The defendant claims that evidence of lenders allowing borrowing-base deficiencies shows his "good-faith belief [that the charged] conduct was permitted." MIL 5-6. The argument makes little sense. It is true that, at times, 777 *disclosed* small borrowing-base deficiencies, and lenders gave 777 an opportunity to cure those deficiencies. That does not, however, support the inference that the defendant believed he could run massive *undisclosed* deficiencies on those lending facilities, for extended periods of time. Similarly, lenders' alleged willingness to authorize, occasionally, the defendant to use money from credit facilities for purposes that their contracts did not allow, does not support the inference that the defendant believed he could use funds without authorization or disclosure. If anything, the defendant's prior disclosure of borrowing-base deficiencies, and his seeking authorization for unpermitted uses of funds, shows that he knew lenders wanted to know about those issues, so he was acting in bad faith when he hid deficiencies or misused funds without permission.

The arguments about materiality are even further afield. MIL 6-7. Materiality focuses on "the effect . . . *of the alleged misrepresentation*" on a reasonable investor in the recipient's shoes. *Kousisis v. United States*, 605 U.S. 114, 131 (2025) (emphasis added); *accord United States v. Litvak*, 889 F.3d 56, 64 (2d Cir. 2018) ("A misrepresentation is important if there is a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available."). In this

case, then, the question is whether a reasonable lender would have viewed the borrowing-base deficits, and misuses of funds, about which the defendant lied as significant in the context of the available information. The evidence that the defendant seeks to offer about *different* transactions does not bear on that issue. For example, suppose 777 disclosed a $10 million borrowing-base deficiency to a lender in 2019, and the lender gave 777 time to cure the deficit. That sheds no light on whether a $150 million, undisclosed deficiency on the same credit facility was material. In other words, the defendant's proposed evidence does not show whether the fraud at issue was material; rather, it bears on the materiality of other, dissimilar issues.

The Supreme Court's decision in *Universal Health Servs. v. United States ex rel. Escobar* proves the point. 579 U.S. 176 (2016). The question in that case was whether making misleading statements about "compliance with a statutory, regulatory, or contractual" requirement in submitting claims to the Government was material. *Id.* at 193. In addressing the evidence that could prove materiality, the Supreme Court noted that it could be relevant whether the Government typically did, or did not, withhold payment "based on noncompliance *with the particular* statutory, regulatory, or contractual requirement." *Id.* at 195 (emphasis added). The takeaway is that, for evidence of past conduct to be relevant to materiality, there needs to be similarity between the prior examples and the misrepresentation at issue. The defendant, however, has not even identified the past conduct he seeks to introduce, let alone provided a reason to think it is sufficiently similar to the massive deficits and misuses of funds at issue in this case to have any relevance to the jury's evaluation of materiality.

On the other side of the ledger, the evidence the defendant seeks to introduce presents a significant risk of confusing or misleading the jury, absent time-consuming detours to explore each example he plans to introduce. For instance, the defendant has cited as examples three chats

between himself and a former Leadenhall employee, whom the Government does not anticipate will testify at trial. *See* Estes Decl. Exs. 2-4. The context of the conversations is not clear from the messages; many of the terms and concepts discussed therein will be unfamiliar to the jury; and how the agreements in the messages do, or do not, comport with what was allowed under the relevant credit agreements is not self-evident from the documents. Without that context, the jury will be left with little ability—other than the assertions of the lawyers—to understand the messages and assess their relevance. This creates a substantial risk that the Government will need to offer documents or testimony to contextualize the materials, extending the trial length on collateral issues. That risk of unnecessarily wasting time is all the more severe because the defendant has not identified all the instances of lender conduct about which he intends to introduce evidence.

Accordingly, this Court should preclude the defendant from offering the lender-conduct evidence he seeks to admit. Or at a minimum, the Court should consider the defendant's request on an issue-by-issue basis after the defendant has made a more fulsome proffer of the evidence he seeks to introduce. *See* Fed. R. Evid. 104 (allowing the Court to make a preliminary determination on the admissibility of evidence).

### C. The Court Should Exclude Wander's Proffered Evidence Regarding A-CAP

The Court should likewise deny the defendant's request to introduce evidence that A-CAP "lent money to 777 affiliates for reasons unrelated to any representation made by Mr. Wander" and of A-CAP's "submissions to the Utah and South Carolina insurance regulators." MIL 1, 8-10. This evidence, like the Leadenhall evidence described above, is of minimal probative value and presents a high risk of confusing or misleading the jury and wasting time.

The defendant claims he should be permitted to introduce evidence from a "person with knowledge of A-CAP's business model" that A-CAP lent money to 777 "to provide liquidity to

[Mr. Wander's company] JARM/Wander in order for JARM to make payments on the JARM debt to ACAP insurers." MIL 8. Notably, the defense has not informed the Court how it intends to admit this "evidence" at trial. The e-mail upon which Wander relies is hearsay. Estes Decl. Ex. 5. And the Government further understands that the "person with knowledge" who drafted the e-mail may have conducted an external investigation into A-CAP after the fact but lacks any first-hand knowledge of A-CAP's lending business. This evidence is thus not properly admitted at trial.

Even if admissible, the information is of minimal probative value. Wander claims the evidence is "probative of whether [his] representations to A-CAP were material." MIL 8. But, as noted above, materiality focuses on "the effect . . . of the alleged misrepresentation" on a reasonable investor in the recipient's shoes. *Kousisis*, 605 U.S. at 131 (2025); *see Litvak*, 889 F.3d at 64. The question is whether a reasonable lender would have viewed Wander's promise to keep the loan proceeds in his JARM account as "significant" in the context of the available information. The evidence the defendant seeks to admit—that A-CAP lent Wander the money because it wanted Wander to pay back an existing JARM debt—does not meaningfully bear on that issue. If anything, the evidence *corroborates* A-CAP's anticipated testimony that it wanted the loan proceeds to remain in Wander's account and not be further dissipated.

The defendant also claims that he should be permitted to introduce evidence of "multiple regulatory actions" against A-CAP that purportedly allege that A-CAP made a series of false statements in its state filings. MIL 9. According to Wander, "these misrepresentations bear directly on the intent element of Count Five." MIL 9. That argument does not add up. There is no proof that A-CAP made any false statements. Any allegations to that effect in the "regulatory actions"—one of which appears to have been dismissed—are merely allegations and of minimal probative value. *See, e.g.*, *United States v. Agostini*, 280 F. Supp. 2d 260, 262 (S.D.N.Y. 2003) (noting that

criminal charges without a disposition are "merely allegations," and holding that it would be "improper to introduce evidence of such Arrests . . . when [the witness] might eventually be acquitted of such charges"). It is also unclear how these allegations, even if true, translate to a finding of "good faith" on the part of Wander. MIL 10. Wander has not proffered any facts to believe that he was aware of A-CAP's supposedly improper filings practices when he took out the A-CAP loan, much less why alleged wrongdoing on A-CAP's part could make Wander think that he was authorized to lie.[3]

At the same time, were this evidence to be admitted, the risk of prejudice, delay, and confusing the issues would be significant. There is a meaningful risk that the jury, upon learning that regulatory actions were filed against ACAP, would necessarily believe that ACAP engaged in some wrongdoing. Even more so, if this evidence were introduced, the Government would be compelled to present its own evidence, in the form of lay or potentially expert testimony, to respond to the unsubstantiated claims that ACAP violated the applicable state insurance regulations. This would lead to a series of mini trials on the esoteric topic of state insurance law, which is not at all pertinent to the issues in this trial.

### D. Government Exhibits 10A and 10B Are Admissible

The Court should deny the defendant's request to exclude Government Exhibits 10A and 10B from trial. The charts are relevant to proving the charged offenses and pose little risk of unfair prejudice.

---

[3] For similar reasons, Wander should be precluded from cross-examining any A-CAP witnesses who participated in submitting the state insurance filings on their "character for untruthfulness" based on the unsubstantiated allegations described above. *See Saldarriaga v. United States*, No. 99 Civ. 4487 (WK), 2002 WL 449651, at *4 (S.D.N.Y. Mar. 21, 2002) ("Unsubstantiated civil rights allegations made against [the witness] would have no bearing on his 'character for truthfulness.'").

Exhibits 10A and 10B are charts prepared by expert witness Professor Christian Lundblad. Together, they reflect that 777 paid hundreds of millions of dollars in aviation and sports-related expenses between May 2021 and March 2023. Professor Lundblad is further expected to testify that, during the same time period, 777 incurred significant borrowing base deficits in its credit facilities and began double- and triple-pledging assets, and pledging assets that 777 never purchased, to conceal those deficits. Rather than using funds from its credit facilities to purchase structured settlements, which Wander could have pledged to the facilities, Wander instead pledged assets that were already encumbered and drew-down funds from his lenders, which he then used, at least in part, to pay for planes and sports teams.

The defendant argues these charts are inadmissible "*in toto*" because they do not "trace any of the aviation- or sports team-related payments to monies from the credit facilities." MIL 10. The defense overlooks that Professor Lundblad has provided at least one example of funds moving directly from the Leadenhall credit facility to purchase airplanes in the spring of 2021. *See* Estes Decl. Ex. 6, ¶ 63. In any event, the tracing of assets is a distraction. The charts explain the motive behind Wander's double- and triple-pledging of assets: by not spending money on buying structured settlements, Wander was able to divert hundreds of millions of dollars to ramp up his sports-team and aviation businesses—areas he was more interested in pursuing. Thus, evidence of this spending is "inextricably intertwined" with the evidence of the charged offenses, and "necessary to complete the story of the crime on trial." *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000); *see also United States v. Quinones*, 511 F.3d 289, 309 (2d Cir. 2007).

The Court also should reject Wander's arguments of unfair prejudice. The defendant may prefer that jurors not learn that he spent hundreds of millions of dollars on planes and sports teams while claiming to lack the funds to pay back his lenders or meet payroll and pay bonuses. But the

fact that "evidence [is] 'damning' does not render it inadmissible." *United States v. Vargas*, 702 F. Supp. 70, 73 (S.D.N.Y. 1998) (citation omitted).

Nor is there merit to the defense's argument that this chart must instead be presented through the testimony of a lay summary witness. On this point, Wander cites only *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 553 (S.D.N.Y. 2004), but in *Rezulin*, the court precluded an expert witness from "merely repeat[ing] facts or opinions stated by other potential witnesses or in documents produced in discovery" or drawing "simple inferences from documents produced in discovery." *Rezulin* did not preclude any experts from testifying because, as the defense seems to suggest here, "[s]umming bank-record payments" is too simple of math to qualify as expert testimony. MIL 11.

**E. Evidence of Wander's Spending Is Admissible**

The defendant's request to preclude the Government from introducing evidence of the defendant's lavish spending also should be denied. MIL 11-14. For the reasons set forth in the Government's motion *in limine*, this evidence is admissible, both as direct evidence of the charged offenses and as proof of motive or intent under Rule 404(b). *See* Dkt. 69 at 34-36.

The defendant argues that evidence of Wander's spending is inadmissible because "the charged offenses are misrepresentations to lenders and investors" and "[h]ow Mr. Wander spent money at the company he founded is not indicative of fraud." MIL 13. The evidence at trial, however, will show that Wander used the monies he obtained through misrepresentations to lenders and investors to fund his lavish lifestyle, including for personal travel, gambling, and a private jet. Wander's personal spending therefore is "inextricably intertwined with the evidence regarding the charged offense" and "necessary to complete the story of the crime on trial." *Carboni*, 204 F.3d at 44.

Evidence of the defendant's personal spending is also admissible as proof of motive and intent under Rule 404(b). The defendant argues this evidence should be excluded as "lifestyle-propensity" evidence that is unduly prejudicial. MIL 13-14. The defendant has seriously overstated the risk of unfair prejudice given the facts of Wander's business. Even without the introduction of any evidence relating to Wander's personal spending, the jury in this case is likely to learn that the defendant controlled a billion-dollar business, used money from that business to purchase airplanes and sports teams, and then traveled around the globe (often on a private jet) to oversee those business operations. Evidence of Wander's personal spending, in turn, presents little risk of unfair prejudice. The motion should be denied.

## II. The Court Should Deny the Defendant's Motion to Dismiss Count Six

The defendant's motion to dismiss Count Six should be denied, because the Indictment is facially valid and properly alleges venue.

### A. Applicable Law

#### 1. Motions to Dismiss

An indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged" and must, for each count, "give the official or customary citation of the . . . law that the defendant is alleged to have violated." Fed. R. Crim. P. 7(c)(1); *United States v. Torres*, No. 20 Cr. 608 (DLC), 2021 WL 1947503, at *3 (S.D.N.Y. May 13, 2021). An indictment is sufficient under Rule 7 and the Fifth Amendment "as long as it (1) contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and (2) enables the defendant to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Wedd*, 993 F.3d 104, 120 (2d Cir. 2021) (internal quotation marks and alteration omitted).

To satisfy these requirements, "an indictment need do little more than to track the language of the statute charged and state the time and place . . . of the alleged crime." *Id*. That is, it need only describe the "core of criminality to be proven at trial," not "the particulars of how a defendant effected the crime." *United States v. Daugerdas*, 837 F.3d 212, 225 (2d Cir. 2016).

When considering a motion to dismiss an indictment, "the facts alleged by the government must be taken as true." *United States v. Velastegui*, 199 F.3d 590, 592 n.2 (2d Cir. 1999). The law is well settled that "[a]n indictment returned by a legally constituted and unbiased grand jury . . . if valid on its face, is enough to call for trial of the charges on the merits." *Costello v. United States*, 350 U.S. 359, 363 (1956).

These limitations exist because indictments are "not meant to serve an evidentiary function," but rather, "to acquaint the defendant with the specific crime with which he is charged, allow him to prepare his defense, and protect him from double jeopardy." *United States v. Juwa*, 508 F.3d 694, 701 (2d Cir. 2007) (internal citations omitted). Accordingly, "at the indictment stage, [courts] do not evaluate the adequacy of the facts to satisfy the elements of the charged offense." *United States v. Dawkins*, 999 F.3d 767, 780 (2d Cir. 2021) (internal citations omitted). "That is something [courts] do after trial." *Id.* Dismissal is a "drastic remedy that should be utilized with caution and only in extreme cases." *United States v. Walters*, 910 F.3d 11, 26 (2d Cir. 2018) (internal citations omitted).

Where venue is challenged on a pretrial motion to dismiss, the government's burden is limited to showing that the indictment alleges facts sufficient to support venue. Fed. R. Crim. P. 12(b)(3)(A)(i); *see United States v. Bankman-Fried*, 680 F. Supp. 3d 289, 314-15 (S.D.N.Y. 2023); *United States v. Peterson*, 357 F. Supp. 2d 748, 751 (S.D.N.Y. 2005); *United States v. Ohle*, 678 F. Supp. 2d 215, 231-32 (S.D.N.Y. 2010). "At this stage in the proceedings, the Government need

only allege with specificity that the charged acts support venue in this district, and the Court assumes as true the allegations in the Indictment." *United States v. Percoco*, No. 16 Cr. 776 (VEC), 2017 WL 6314146, at *16 (S.D.N.Y. Dec. 11, 2017). Courts in this District have recognized that "as long as the indictment alleges venue, a pretrial motion to dismiss based on contrary allegations by the defendant must be denied." *United States v. Stein*, 429 F. Supp. 2d 633, 643 (S.D.N.Y. 2006); *see also United States v. Milton*, No. 21 Cr. 478 (ER), 2021 WL 5304328, at *3 (S.D.N.Y. Nov. 15, 2021). "The question of whether there is sufficient evidence to support venue is appropriately left for trial." *Ohle*, 678 F. Supp. 2d at 231.

2. Surplusage

"Although the Federal Rules of Criminal Procedure grant the Court authority to strike surplusage from an indictment, it has long been the policy of courts within the Southern District to refrain from tampering with indictments." *United States v. Bin Laden*, 91 F. Supp. 2d 600, 621 (S.D.N.Y. 2000) (quotation marks, alterations, and citations omitted). "Motions to strike surplusage from an indictment will be granted only where the challenged allegations are not relevant to the crime charged and are inflammatory or prejudicial." *United States v. Scarpa*, 913 F.2d 993, 1013 (2d Cir. 1990) (quotation marks omitted). "[I]f evidence of the allegation is admissible and relevant to the charge, then regardless of how prejudicial the language is, it may not be stricken." *Id.* (quotation marks omitted); *see also United States v. Mulder*, 273 F.3d 91, 99 (2d Cir. 2001) (quoting *Scarpa*, 913 F.3d at 1013). "Given this exacting standard, such motions [to strike] are rarely granted." *United States v. Coffey*, 361 F. Supp. 2d 102, 123 (E.D.N.Y. 2005). And when motions are made, courts typically defer rulings until trial. *See, e.g.*, *United States v. Maxwell*, 534 F. Supp. 3d 299, 322 (S.D.N.Y. 2021) ("Courts in this District generally delay ruling on any motion to strike until after the presentation of the Government's evidence at trial, because

that evidence may affect how specific allegations relate to the overall charges.”).

In setting forth allegations in a charging instrument, the Government is not limited to an enumeration of the bare elements of a crime; instead, a charging instrument may be used to provide background to the charged criminal conduct, to describe the circumstances, means, and methods, of an offense, and to describe evidence that is otherwise admissible at trial. *See United States v. Mostafa*, 965 F. Supp. 2d 451, 466 (S.D.N.Y. 2013) (citing *Mulder*, 273 F.3d at 99). Where there is any doubt about the connection between the allegations and the evidence that will be admitted at trial, “[c]ourts in this district routinely await presentation of the Government’s evidence at trial before ruling on a motion to strike.” *Id.* at 467; *see also Maxwell*, 534 F. Supp. 3d 322 (“The Court will follow the well-worn path of others in this District and reserve the issue [of striking surplusage] for trial.”). As multiple courts have concluded, “‘[t]here is little or no purpose in attempting to predict in advance of trial what evidence will prove admissible or how specific allegations relate to the overall charges.’” *United States v. Smith*, 985 F. Supp. 2d 547, 612 (S.D.N.Y. 2014) (brackets in original) (quoting *United States v. Butler*, 351 F. Supp. 121, 124 (S.D.N.Y. 2004)).

**B. Count Six Properly Alleges Witness Tampering**

The defendant seeks the dismissal of Count Six, arguing that it fails to state an offense. The defendant’s motion should be denied, because Count Six is adequately pleaded, and the defendant’s arguments to the contrary impermissibly ask this Court to “weigh the sufficiency of the evidence underlying the indictment.” *United States v. Perez*, 575 F.3d 164, 166 (2d Cir. 2009).

Count Six tracks the statutory language, states the elements of the offense, lays out the timeframe of the offense, and provides a to wit clause with additional factual allegations. Ind. ¶

47. The count is legally sufficiency as charged, and neither Rule 7(f) nor the Fifth Amendment requires anything more. *See Wedd*, 993 F.3d at 120.

Despite the facial validity of Count Six, the defendant nevertheless invites the Court to conduct a pre-trial assessment of the Government's proof, insisting that the "evidence does not meet the elements of the witness tampering statute." MTD 8. The defendant goes on to argue that the Indictment is devoid of evidence that Wander used threats or intimidation, MTD 8-9, acted knowingly, *id.* at 9-11, or acted corruptly, *id*. at 11-15. But resolving those claims would require the Court to weigh the sufficiency of the Government's proof before a full presentation of its evidence at trial. And it is well-settled that whether the Government's proof establishes the elements of witness-tampering is a question for the jury or a matter for the Court to take up "*after* trial." *Dawkins*, 999 F.3d 767 (emphasis added).

The defendant attempts to short-circuit that process, insisting that this court may test the sufficiency of the evidence because, in the defendant's view, the Government has offered a full proffer of its evidence. MTD 8. To that end, the defendant declares the Government's proof as to Count Six complete, citing the Government's description of the tampering event in its bail modification motion, as well as a series of text messages submitted to the Court and produced in discovery. But the Government has never agreed with that characterization, much less "filed an affidavit making a full proffer of the evidence to be presented at trial." *United States v. Alfonso*, 143 F.3d 772, 777 (2d Cir. 1998). Most obviously missing, the Government has not proffered the expected testimony of Analyst-2 or other witnesses whose testimony may bear on the defendant's intent behind his outreach to Analyst-2.

Even if the Court were to accept the defendant's meritless invitation to assess the sufficiency of the Government's evidence pre-trial, the defendant misstates or altogether ignores

the controlling interpretation of Section 1512(b). This Circuit has long "defined 'corrupt persuasion' as persuasion that is 'motivated by an improper purpose.'" *United States v. Gotti*, 459 F.3d 296, 343 (2d Cir. 2006) (quoting *United States v. Thompson,* 76 F.3d 442, 452 (2d Cir. 1996)). The defendant asks the Court to reject that construction of the statute, insisting that it conflicts with the Supreme Court's decision in *Arthur Andersen LLP v. United States*, 544 U.S. 696 (2005). But the holding in *Arthur Andersen* that an individual must be conscious of wrongdoing, *id.* at 697, does not answer what conduct constitutes the wrongdoing, *i.e.*, the "corrupt persuasion." The Second Circuit has answered that question—before and after *Arthur Andersen*—to define the term as "persuasion motivated by an improper purpose." *See Thompson*, 76 F.3d at 452, *Gotti*, 459 F.3d at 343, *United States v. Price*, 443 F. App'x 576, 581 (2d Cir. 2011). The Second Circuit's post-*Andersen* cases did not overlook *Andersen*, as defendant suggests, MTD 11 n.3. Rather, there was no need for those cases to address *Andersen*, because *Andersen* did not undermine the Circuit's longstanding construction of "corruptly persuades" in Section 1512.

The defendant all but admits that his sufficiency challenge fails under proper application of the Second Circuit's interpretation of Section 1512. That is, the defendant acknowledges that the Indictment alleges the defendant's state of mind—"that he acted 'knowingly,' 'with intent to influence,' and with 'the purpose of influencing Analyst-2's testimony.'" MTD 10 (quoting Ind. ¶ 47). Likewise, the defendant does not contest the sufficiency of the evidence that the defendant was motivated by an improper purpose in seeking to persuade Analyst-2 to testify falsely and engaged in misleading conduct. After all, the Indictment plainly states that Wander "intend[ed] to influence, delay, and prevent the testimony of a person in an official proceeding . . . for the purpose of influencing Analyst-2's testimony by, among other things, telling Analyst-2 that" someone other than Wander was responsible for directing the preparation of fake bank statements. Ind. ¶ 47.

Instead, the defendant simply offers his preferred reading of the statute under Ninth and Third Circuit caselaw and insists the Government's evidence is insufficient to meet that construction of the law. MTD 13. If the Court's role at this stage is not to assess the sufficiency of the evidence, much less is it to apply an out-of-circuit legal standard in conducting that assessment.

**C. Count Six Properly Alleges Venue**

The Indictment alleges that the defendant, in or about October 2025, up to and including in or about May 2026, engaged in witness tampering within the Southern District of New York. Ind. ¶ 47. That allegation is sufficient to survive a pretrial motion to dismiss, and the factual question of whether the Government can carry its burden to prove venue by a preponderance of the evidence is properly left for trial. *See Ohle*, 678 F. Supp. 2d at 231.

Section 1512(i) provides that "a prosecution under this section or section 1503 may be brought in the district in which the official proceeding was intended to be affected or in the district in which the conduct constituting the alleged offense occurred." Consistent with that statutory language, the Second Circuit has long held that charges of witness tampering under 18 U.S.C. § 1512(b) may be brought in the court where the underlying trial is taking place. *See United States v. Daidone*, 471 F.3d 371, 376 (2d Cir. 2006); *United States v. Fakih*, 264 F. App'x 78, 80 (2d Cir. 2008). The defendant altogether ignores the controlling caselaw in this Circuit and the statute's express venue language, arguing that the Supreme Court's recent decision in *Abouammo v. United States*, 146 S. Ct. 1571, 1577 n.3 (2026), restricts the witness-tampering venue to the location where the defendant "performs any of the enumerated acts with the requisite intent." MTD 17. *Abouammo* did not construe the witness-tampering statute charged in Count Six. It construed Section 1519, which does not contain language providing for venue in the district where an official proceeding occurs. Indeed, *Abouammo* was clear to distinguish Section 1512(b) from statutes like

Section 1519 "where congress is *not* explicit about the applicable venue rule." *Id.* (emphasis added). Underscoring the point, the Court stated, "nothing we say today is meant to address that statutorily created venue scheme" in direct reference to the language of 1512(i). *id*.

The defendant maintains that statutory venue authorization cannot override the essential-conduct test, which *Abouammo* made clear is "grounded in the Constitution." MTD 19. Section 1512 satisfies that constitutional inquiry. Unlike Section 1519, to establish the elements of 1512(b) charge, the Government must prove a "nexus" between the effort to tamper and the particular proceeding being obstructed. *United States v. Quattrone*, 441 F.3d 153, 180-81 (2d Cir. 2006). That means the proceeding itself—and its location—is embedded in an element of the crime. In other words, the location of the proceeding is part of the essential conduct of the crime, and as a result venue may be brought in the location of the proceeding. In any event, the defendant's constitutional challenge fails because *Daidone* and *Fakih* remain governing law unless and until the Circuit says otherwise.

### D. The Court Should Deny the Motion to Strike Language from the Indictment

The defendant's motion to strike the statutory language from the Indictment is also meritless. MTD 20-21. An adequately pled indictment must "track the language of the statute charged." *United States v. Daugerdas*, 837 F.3d 212, 225 (2d Cir. 2016). That is precisely what Count Six does, reciting without factual adornment the four ways a defendant may engage in witness tampering. Leaving aside that it is premature to assess whether the Government's evidence is sufficient to establish any of the four tampering methods, *Mostafa*, 965 F. Supp. 2d at 467, it cannot be the case that a defendant is entitled to claim as prejudicial and remove as surplusage the bare statutory language that Rule 7 and the Fifth Amendment require. Not surprisingly, the defendant cites no case holding that unadorned statutory charging language may constitute

surplusage. Instead, the defendant relies on a single case, in which the district court granted, and the Circuit affirmed, a defendant's motion to strike an incendiary factual allegation that was entirely outside the charged crime. *United States v. Malachowski,* 604 F. Supp. 2d 512, 519 (N.D.N.Y. 2009), *aff'd,* 415 F. App'x 307 (2d Cir. 2011). The motion to strike language should be denied.

## CONCLUSION

For the reasons set forth above, the defendant's motions should be denied.

Dated: New York, New York
October 2, 2026

Respectfully submitted,

JAMES M. MCDONALD
United States Attorney
Southern District of New York

By: Alexandra Rothman
______________________________
Thomas S. Burnett
Marguerite B. Colson
Alexandra N. Rothman
Assistant United States Attorneys
Tel.: (212) 637-1064/-2587/-2580