UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

*v*.

JOSHUA WANDER,

*Defendant*.

**No. S1 25 Cr. 473 (JPO)**

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT JOSHUA WANDER'S MOTIONS *IN LIMINE* AND MOTION TO DISMISS COUNT SIX**

# TABLE OF CONTENTS


Page

PRELIMINARY STATEMENT ........ 1

ARGUMENT ........ 1

I. Evidence of the Lenders' Course of Conduct Is Probative of Intent and Materiality. ........ 1

II. Evidence Regarding A-CAP Is Probative of Mr. Wander's Lack of Intent to Commit Fraud and Certain A-CAP Witnesses' Credibility. ........ 3

III. Professor Lundblad Should Not Testify About Mr. Wander's Purposes or Motives. ........ 4

IV. The Government Should Be Held to Its Rule 404(b) Notice. ........ 5

V. The Court Should Grant Mr. Wander's Motion To Dismiss Count Six. ........ 5

CONCLUSION ........ 8

## TABLE OF AUTHORITIES

**Cases** Page(s)

*Abouammo v. United States*, 608 U.S. 597 (2026) .......... 7

*Arthur Andersen LLP v. United States*, 544 U.S. 696 (2005) .......... 7

*Basic Inc. v. Levinson*, 485 U.S. 224 (1988) .......... 2

*Hynes v. Coughlin*, 79 F.3d 285 (2d Cir. 1996) .......... 4

*In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531 (S.D.N.Y. 2004) .......... 5

*Martinez v. City of New York*, 16 Civ. 79, 2022 WL 20042798 (E.D.N.Y. Dec. 4, 2022) .......... 4

*Saldarriaga v. United States*, 97 Cr. 1275 (WK), 2002 WL 449651 (S.D.N.Y. Mar. 21, 2002) .......... 4

*United States v. Bowen*, 511 F. Supp. 3d 441 (S.D.N.Y. 2021) .......... 4

*United States v. Daidone*, 471 F.3d 371 (2d Cir. 2006) .......... 7

*United States v. DiDomenico*, 985 F.2d 1159 (2d Cir. 1993) .......... 5

*United States v. Fakih*, 264 F. App'x 78 (2d Cir. 2008) .......... 7

*United States v. Litvak*, 889 F.3d 56 (2d Cir. 2018) .......... 3

*United States v. Matthews*, 20 F.3d 538 (2d Cir. 1994) .......... 1

*United States v. Quattrone*, 441 F.3d 153 (2d Cir. 2006) .......... 7

*Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176 (2016) .......... 2

**Statutes**

18 U.S.C. § 1512(b) .......... 7

18 U.S.C. § 1512(f)(1) .......... 7

18 U.S.C. § 1512(i) .......... 6, 7

**Rules**

Fed. R. Evid. 404(b)(3) .......... 5

Fed. R. Evid. 608(b) .......... 3, 4

Fed. R. Evid. 704(b) .......... 5

## PRELIMINARY STATEMENT

Defendant Joshua Wander respectfully submits this memorandum of law in further support of four of his motions *in limine* and his motion to dismiss Count Six of the Superseding Indictment. For avoidance of doubt, Mr. Wander rests on the arguments set forth in his opening briefs and does not waive any motions not addressed in this reply.

## ARGUMENT[1]

### I. Evidence of the Lenders' Course of Conduct Is Probative of Intent and Materiality.

Mr. Wander should be permitted to introduce evidence of lenders' course of conduct that bears on his intent and materiality. The examples cited in his opening brief are illustrative of the types of evidence Mr. Wander seeks to introduce, and Mr. Wander agrees that the Court should admit such evidence on an issue-by-issue basis.[2] *See* ECF No. 74 at 7.

The government's argument regarding intent confuses weight with admissibility. *See id.* at 5. Evidence of how the lenders actually treated borrowing-base deficiencies and uses of funds outside the written agreements bears directly on whether Mr. Wander believed that his alleged statements were deceptive. The weight of such evidence is for the jury to decide, and the government is free to argue for the opposite inference. *See United States v. Matthews*, 20 F.3d 538, 548 (2d Cir. 1994). The government is also incorrect in arguing that such evidence is

---

[1] All citations to exhibits refer to the exhibits attached to the Declaration of Jordan Estes filed in support of Mr. Wander's motions *in limine*. ECF No. 72.

[2] Mr. Wander does not intend to impeach the credibility of any witness using the communications of a different person if that witness does not know the facts underlying that communication. *See* ECF No. 74 at 4. As noted in his opening brief, Mr. Wander was at times instructed not to communicate waivers of his contractual requirements to other employees at the same lender. *E.g.*, ECF No. 71 at 5 ("On May 10, 2019, [a senior] employee agreed to Mr. Wander's request to 'use and replace' funds when told that 777 'need[ed] cash today,' though he asked that Mr. Wander not tell another employee at Lender-1."). The lender's statement bears on Mr. Wander's intent, even if it could not be used to cross-examine any specific witness.

"likely not . . . relevant" if Mr. Wander "was not involved in a particular example." ECF No. 74 at 4–5. Personal involvement is sufficient, but not necessary, to establish Mr. Wander's knowledge of the lenders' relevant conduct. If Mr. Wander was *aware* of the example, even if not "involved," then that incident bears on his state of mind for the ongoing course of dealing with that lender. For each prior instance of relevant lender conduct, the connection to Mr. Wander's state of mind will be furnished at trial, as will evidence demonstrating that a particular authorization concerned an alleged violation of a credit agreement. *See id.* at 5.

The government's argument about materiality is similarly flawed. The government cites *Universal Health Services, Inc. v. United States ex rel. Escobar*, 579 U.S. 176 (2016), to support its contention that "there needs to be similarity between the prior examples and the misrepresentation at issue." ECF No. 74 at 6 (citing *Universal Health*, 579 U.S. at 194–95). There of course is similarity here: a lender's practice of regularly granting borrowing requests, despite knowing that a borrowing base deficiency existed, is probative that a requirement prohibiting such deficiencies was not material. The representation at issue—compliance with the borrowing base requirement—is the same; the government's allegation that there was a difference in the magnitude of the alleged deficiencies goes, at best, to the weight of that evidence. *See Basic Inc. v. Levinson*, 485 U.S. 224, 236 (1988) (describing materiality as "inherently fact-specific").

Because Mr. Wander only intends to introduce evidence of prior authorizations of conduct that is similar to the issues in this case, there is also little risk of confusing or misleading the jury. The "terms and concepts discussed" in each message will already be familiar to the jury, and the "context" of each prior authorization will be provided through the foundation laid

for each item—including through the lenders' own witnesses and the documents in the government's production. ECF No. 74 at 7.

## II. Evidence Regarding A-CAP Is Probative of Mr. Wander's Lack of Intent to Commit Fraud and Certain A-CAP Witnesses' Credibility.

As explained in Mr. Wander's opening brief, evidence of Mr. Wander's good-faith belief that A-CAP was indifferent to the alleged inaccuracy of the bank statements at issue is indicative of his belief that A-CAP could not be deceived by the bank statements. That evidence, in turn, is probative of Mr. Wander's lack of intent to defraud A-CAP. ECF No. 71 at 9–10. Evidence that A-CAP knew the truth and intended to submit the allegedly false bank statements to regulators about the very loans at issue indicates that A-CAP did not care about the accuracy of the bank statements. The government does not seriously dispute that A-CAP's purpose in making the March 2022 loan is relevant; it argues only that the evidence "corroborates A-CAP's anticipated testimony." ECF No. 74 at 8. That is a dispute about inferences, and it is for the jury.

[redacted] That evidence bears on what a reasonable lender in A-CAP's position would have considered important, and therefore on the materiality of the alleged misrepresentations concerning the bank statements. *See United States v. Litvak*, 889 F.3d 56, 65 (2d Cir. 2018).

In addition, Mr. Wander should be permitted to question relevant A-CAP witnesses about their involvement in the submission of false statements to insurance regulators pursuant to Rule 608(b). The government is incorrect to assert that Mr. Wander would be cross-examining A-CAP witnesses based on "unsubstantiated" allegations. *See* ECF No. 74 at 9. "Rule 608(b) requires a party who seeks to cross-examine a witness about prior acts of untruthfulness to have a 'good

faith' belief that those acts actually occurred." *Martinez v. City of New York*, 16 Civ. 79, 2022 WL 20042798, at *7 (E.D.N.Y. Dec. 4, 2022) (citing *Hynes v. Coughlin*, 79 F.3d 285, 294 (2d Cir. 1996)). Both the email cited in Mr. Wander's opening brief, and the very allegations raised by the South Carolina Insurance Commissioner, furnish a good-faith basis for believing that A-CAP made false and misleading statements to regulators.[3] *See United States v. Bowen*, 511 F. Supp. 3d 441, 454 (S.D.N.Y. 2021) (a prosecutor's statements at a plea hearing doubting the credibility of a police officer provided a good-faith basis for cross-examination about the underlying conduct under Rule 608(b) even though there was no finding by a court). *Saldarriaga v. United States*, on which the government relies, is not to the contrary. 2002 WL 449651 (S.D.N.Y. Mar. 21, 2002). It involved private civil-rights allegations of misconduct that had nothing to do with honesty, *id.* at *4; here, by contrast, a state insurance regulator has alleged, in a formal petition, that A-CAP made false statements to the regulator itself.

In any event, the petitions cited in Mr. Wander's opening brief supply the underlying facts about which Mr. Wander intends to question each relevant witness. *See, e.g.*, ECF No. 71 at 9 (quoting the South Carolina Department of Insurance petition noting a "contradict[ion]" between A-CAP's February 20, 2026, statement to the Department and 777 Partners' first-day declaration regarding loans owed to A-CAP). The documents referenced in the petition thus independently establish Mr. Wander's good-faith belief that the underlying conduct occurred.

**III. Professor Lundblad Should Not Testify About Mr. Wander's Purposes or Motives.**

The government's opposition describes testimony from its expert that goes well beyond Exhibits 10A and 10B. It says Professor Lundblad will testify that 777 pledged assets "to

---

[3] To clarify, Mr. Wander does not intend to offer into evidence the email itself, which was provided to the Court as additional background for this motion *in limine*. *See* ECF No. 71 at 8–9; Ex. 5.

conceal" borrowing-base deficits and that Mr. Wander diverted funds to aviation and sports businesses because those were "areas he was more interested in pursuing." ECF No. 74 at 10. In a criminal case, an expert may not state an opinion about whether the defendant had the mental state that constitutes an element of the crime. Fed. R. Evid. 704(b); *see United States v. DiDomenico*, 985 F.2d 1159, 1164–65 (2d Cir. 1993). Testimony about why assets were pledged, or which businesses Mr. Wander preferred, is testimony about purpose and motive, and the Court should preclude it. The charts themselves remain inadmissible for the reasons stated in the opening brief: the single transaction the government traces, ECF No. 74 at 10 (citing Ex. 6 ¶ 63), cannot support charts aggregating hundreds of millions of dollars in payments, and summing payments by category is exactly the kind of "simple inference[]" that *In re Rezulin Products Liability Litigation* holds is not proper expert testimony. 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004).

## IV. The Government Should Be Held to Its Rule 404(b) Notice.

The opposition previews spending evidence that the government's September 11, 2026, notice never disclosed, including "gambling" and spending "while claiming to lack the funds to pay back his lenders or meet payroll and pay bonuses." ECF No. 74 at 10–11. Rule 404(b)(3) requires the government to give notice of "any such evidence" and to articulate its permitted purpose. Fed. R. Evid. 404(b)(3)(A)–(B). The Court should preclude any category of spending evidence the notice did not identify. And the government's argument that the jury will learn of private aircraft and international travel regardless, ECF No. 74 at 12, confirms that personal-spending evidence would be cumulative and would add only prejudice.

## V. The Court Should Grant Mr. Wander's Motion To Dismiss Count Six.

Contrary to the government's representation, Mr. Wander *does* contest that the Superseding Indictment adequately alleges that Mr. Wander sought to persuade Analyst-2 "to

testify falsely and engaged in misleading conduct." ECF No. 74 at 17; *see* ECF No. 66 at 1 ("The misleading-conduct theory fails on the pleading's own terms, because the only alleged false statement is one the Superseding Indictment elsewhere alleges Analyst-2 knew to be false."), 11 ("[Mr. Wander] is not alleged to have asked Analyst-2 . . . to say anything at all."). The charging paragraph of the Superseding Indictment—which contains the sole allegation that Mr. Wander had the "purpose of *influencing* Analyst-2's testimony," Superseding Indictment ¶ 47 (emphasis added)—does not adequately allege that Mr. Wander had the purpose of persuading Analyst-2 to testify "falsely," ECF No. 74 at 17. As Mr. Wander explained in his opening brief, discussing the case with Analyst-2 or recounting his version of the relevant events does not constitute a request that Analyst-2 give false testimony. ECF No. 66 at 13.

The Court may additionally dismiss Count Six based on the sufficiency of the evidence. All the potentially relevant evidence that the government identifies in support of Count Six—"the expected testimony of Analyst-2,"[4] ECF No. 74 at 16, and the Signal communications themselves—was available to the government at the time it moved to modify the conditions of Mr. Wander's pretrial release on June 3, 2026, based on the same alleged conduct. *See* ECF No. 42. On that record, which the government has not supplemented, the Court may assess the sufficiency of the evidence now.

On venue, the government relies on the Superseding Indictment's bare allegation that the offense occurred in this District, ECF No. 74 at 18, but identifies no conduct here. Its only theory is that the proceeding Mr. Wander allegedly intended to affect is pending in this District,

[4] The government suggests that there may be "other witnesses whose testimony may bear on the defendant's intent behind his outreach to Analyst-2," ECF No. 74 at 16, but provides no indication that such witnesses exist or reason to believe that other individuals would be privy to the private communications between Mr. Wander and Analyst-2 that underlie the witness tampering charge.

under Section 1512(i). *Id.* at 18–19. [redacted] Whether Section 1512(i)'s proceeding-location prong can constitutionally supply venue is therefore a pure question of law.

On the merits, the government's only constitutional argument refutes itself. It contends that Section 1512(b)'s "nexus" requirement embeds the location of the proceeding in an element of the offense. ECF No. 74 at 19 (citing *United States v. Quattrone*, 441 F.3d 153, 180–81 (2d Cir. 2006)). But the nexus requirement limits the defendant's *intent*: he must act with the purpose of affecting a proceeding he has in contemplation. *See Arthur Andersen LLP v. United States*, 544 U.S. 696, 707–08 (2005). And the Supreme Court in *Abouammo v. United States* explained that it "has never looked to a statute's mens rea elements in considering venue." 608 U.S. 597, 604 (2026). The statute confirms the point: "an official proceeding need not be pending or about to be instituted at the time of the offense." 18 U.S.C. § 1512(f)(1). The location of a proceeding that need not yet exist cannot be the locus of the conduct that commits the offense. Nor did *Abouammo* endorse Section 1512(i); it expressly reserved that "statutorily created venue scheme," while emphasizing that Congress "lacks the power to finally decide" what the constitutional venue requirement means. 608 U.S. at 603 n.3. And *United States v. Daidone*, 471 F.3d 371 (2d Cir. 2006), and *United States v. Fakih*, 264 F. App'x 78 (2d Cir. 2008), decided long before *Abouammo*, did not consider whether that prong satisfies the constitutional essential-conduct test.

In the alternative to dismissal of Count Six, Mr. Wander respectfully reiterates his request that the Court strike the surplus language suggesting that he "used intimidation" against or

"threatened" any witness. *See* ECF No. 66 at 20–21. The government identifies no allegation of intimidation or threats, yet its proposed jury charge would instruct the jury at length on both. ECF No. 75 at 44–45. That confirms the language is not harmless surplus. At a minimum, the jury should not be instructed on, or provided indictment language concerning, means of tampering for which the government offers no evidence.

**CONCLUSION**

For the foregoing reasons, and the reasons stated in Mr. Wander's opening briefs, Mr. Wander respectfully requests that the Court grant his motions *in limine* and motion to dismiss Count Six of the Superseding Indictment.

Dated: October 7, 2026

Respectfully submitted,

*/s/ Jordan Estes*
Jordan Estes
Dani R. James
Michael Martinez
Samuel Raymond
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
T: (212) 351-4000
JEstes@gibsondunn.com
DJames@gibsondunn.com
MMartinez2@gibsondunn.com
SRaymond@gibsondunn.com

*Attorneys for Joshua Wander*