UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v-

JOSHUA WANDER,
Defendant.

25-CR-473 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

On June 30, 2026, a grand jury returned the superseding indictment charging Defendant Joshua Wander with one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349 (Count One), two counts of wire fraud in violation of 18 U.S.C. § 1343 (Counts Two and Five), one count of conspiracy to commit securities fraud in violation of 18 U.S.C. § 371 (Count Three), one count of securities fraud in violation of 15 U.S.C §§ 78j(b), 78ff and C.F.R. § 240.10b-5 (Count Four), and one count of witness tampering in violation of 18 U.S.C. §§ 2, 1512(b)(1), 1512(j), 3147(1) (Count Six). (*See generally* ECF No. 49.) Before the Court is Defendant's motion to dismiss Count Six of the superseding indictment or, in the alternative, strike language from Count Six as surplusage. (*See* ECF No. 66.)

## I. Background

### A. Factual Background

The following facts are taken from the superseding indictment and are presumed true for the purposes of this pretrial motion to dismiss. *United States v. Alyenikov*, 737 F. Supp. 2d 173, 176 (S.D.N.Y. 2010) (quoting *United States v. Velastegui*, 199 F.3d 590, 592 n.2 (2d Cir. 1999)).

Defendant co-founded 777 Partners LLC ("777 Partners"), a private investment firm whose initial business centered on underwriting and financing structured settlements and other non-traditional investments. (ECF No. 49 ¶ 2.) As part of its investment business, 777 Partners

financed its purchases of structured settlements through multiple credit facilities with private lenders. (*Id.* ¶ 3.) The credit facilities restricted 777 Partners's use of borrowed funds to the purchase of structured settlements. (*Id.*) Additionally, the credit facilities operated on a borrowing base structure, meaning 777 Partners could borrow funds up to a credit limit based on the value of its pledged collateral. (*Id.* ¶ 4.) 777 Partners was required to represent that it was "legal and beneficial owner" of the pledged collateral and that the collateral was "free and clear" from other encumbrances. (*Id.*)

777 Partners proved profitable for years, leading Defendant to expand the company's investment portfolio into new sectors such as insurance, aviation, and professional sports. (*Id.* ¶ 6.) By 2021, in the wake of these various new expenditures, 777 Partners's cash and borrowing capacity diminished. (*Id.* ¶ 7.) Despite warnings from employees—including a financial analyst of particular relevance here ("Analyst-2")—Defendant authorized multiple additional expenditures into ventures for which the company lacked sufficient funding, and for which it could not secure financing. (*Id.* ¶¶ 7, 15)

In the face of a reduced borrowing capacity and liquidity, Defendant directed employees to use the restricted funds of the credit facilities for unauthorized uses—namely, to continue financing 777 Partners' business expansion. (*Id.* ¶ 8.) To obtain those funds, Defendant made representations and directed others to make misrepresentations to lenders regarding 777 Partners's borrowing base and liquidity. (*Id.* ¶¶ 8-14.) And to conceal his misrepresentations, Defendant provided and directed employees such as Analyst-2 to provide lenders with additional misrepresentations, such as lists of structured settlements that 777 Partners claimed to own (but did not), falsified compliance reports, and doctored bank account screenshots. (*Id.* ¶¶ 9-10, 12, 16-17.) Defendant then solicited outside investments in 777 Partners through the sale of

cumulative preferred equity membership interests based on misrepresentations of 777 Partners's financial conditions. (*Id.* ¶¶ 24-26.)

On October 14, 2025, a grand jury returned the original indictment against Defendant in connection with wire fraud and securities fraud at 777 Partners. (*Id.* ¶ 31.) Approximately one week later, Defendant contacted Analyst-2 and directed Analyst-2 to download an encrypted messaging application. (*Id.* ¶ 32.) Defendant further directed Analyst-2 to enable the automatic deletion setting on the encrypted messaging application. (*Id.*) For the next several months, Defendant repeatedly communicated with Analyst-2 through the encrypted messaging application and occasionally discussed this criminal proceeding. (*Id.*)

During a call in May 2026, Defendant asked Analyst-2 to have dinner with him in New York. (*Id.* ¶ 33.) When Analyst-2 declined, Defendant told Analyst-2 that Analyst-2 would likely be required to testify at Defendant's upcoming criminal trial and told Analyst-2 that Defendant's "livelihood" was "in [Analyst-2's] hands." (*Id.*) Defendant then sent Analyst-2 a picture of Defendant and his minor child looking into the camera. (*Id.*) Defendant then continued to contact Analyst-2 through the encrypted messaging application, though Analyst-2 no longer accepted Defendant's calls. (*Id.*)

**B. Procedural Background**

On June 30, 2026, a grand jury returned a superseding indictment that added to the original indictment, in relevant part, Count Six—one count of witness tampering in violation of 18 U.S.C. § 1512(b)(1)—in connection with Defendant's communications with Analyst-2. (ECF No. 49 ¶¶ 31-33, 47.) On September 1, 2026, Defendant filed a motion to dismiss Count Six of the superseding indictment. (*See* ECF No. 66 ("Mot.").) On October 2, 2026, the Government

filed an opposition to Defendant's motion to dismiss. (*See* ECF No. 74 ("Opp.").[1]) On October 8, 2026, Defendant filed a reply in further support of his motion to dismiss. (*See* ECF No. 86 ("Reply").[2])

## II. Legal Standards

### A. Motion to Dismiss

Federal Rule of Criminal Procedure 7(c) establishes that the indictment shall "be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c). Accordingly, "[a]n indictment is sufficient if it: (1) contains the elements of the offense charged and fairly informs a defendant of the charge against him; and (2) allows him to plead acquittal or conviction to bar future prosecution on the same offense." *United States v. Nunez*, No. 22-CR-293, 2023 WL 5432513, at *2 (S.D.N.Y. Aug. 23, 2023).

On a pretrial motion to dismiss, the Court assumes the truth of the allegations in the indictment. *See Velastegui*, 199 F.3d at 592 n.2. The Court does not "weigh the sufficiency of the evidence underlying the indictment, unless the Government has already made 'a full proffer of the evidence it intends to present at trial.'" *Alyenikov*, 737 F. Supp. 2d at 176 (quoting *United States v. Perez*, 575 F.3d 164, 166 (2d Cir. 2009)).

When venue is challenged on a pretrial motion to dismiss, "the Government need only allege with specificity that the charged acts support venue in this district, and the Court assumes as true the allegations in the Indictment." *United States v. Percoco*, No. 16-CR-776, 2017 WL 6314146, at *16 (S.D.N.Y. Dec. 11, 2017) (cleaned up). Thus, "as long as the indictment alleges

---

[1] The Government filed a joint opposition to Defendant's motion to dismiss and Defendant's motions *in limine*. (*See generally* Opp.)

[2] Defendant filed a joint reply in support of his motion to dismiss and Defendant's motions *in limine*. (*See generally* Reply.)

venue, a pretrial motion to dismiss based on contrary allegations by the defendant must be denied." *United States v. Stein*, 429 F. Supp. 2d 633, 643 (S.D.N.Y. 2006).

**B. Motion to Strike**

Federal Rule of Criminal Procedure 7(d) establishes that "the court may strike surplusage from the indictment." Fed. R. Crim. P. 7(d). However, "it has long been the policy of courts within the Southern District to refrain from tampering with indictments." *United States v. Bin Laden*, 91 F. Supp. 2d 600, 621 (S.D.N.Y. 2000) (cleaned up). Accordingly, courts grant motions to strike surplusage only "where it is clear that the alleged surplusage is not relevant to the crime charged and is inflammatory and prejudicial." *Id.*; *see also United States v. Scarpa*, 913 F.2d 993, 1013 (2d Cir. 1990) ("If evidence of the allegation is admissible and relevant to the charge, then regardless of how prejudicial the language is, it may not be stricken." (cleaned up)). Finally, "[c]ourts in this District generally delay ruling on any motion to strike until after the presentation of the Government's evidence at trial, because that evidence may affect how specific allegations relate to the overall charges." *United States v. Maxwell*, 534 F. Supp. 3d 299, 322 (S.D.N.Y. 2021).

**III. Discussion**

**A. Motion to Dismiss**

Defendant lodges two arguments in support of his motion to dismiss Count Six of the superseding indictment. First, Defendant contends that Count Six fails to state an offense for witness tampering. (Mot. at 13-20.) Second, Defendant argues that venue is improper as to Count Six. (*Id.* at 20-25.)

**1. Failure to State an Offense**

Defendant first argues that "[t]he conduct alleged in the Superseding Indictment and the government's evidence does not meet the elements of the witness tampering statute." (Mot. at

13.) In so arguing, Defendant claims that this Court may "consider not only the Superseding Indictment but also the sufficiency of the government's evidence" because "[t]he government has already put its case for Count Six before the Court." (*Id.*)

Generally, courts do not "weigh the sufficiency of the evidence underlying the indictment" in resolving a pre-trial motion to dismiss. *Alyenikov*, 737 F. Supp. 2d at 176. However, courts may "look[] beyond the face of the indictment and dr[a]w inferences as to the proof that would be introduced by the government" in deciding a pre-trial motion to dismiss only when "the government has made what can fairly be described as a full proffer of the evidence it intends to present at trial." *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998). But the Second Circuit has made clear that this "exception" is "extraordinarily narrow." *United States v. Sampson*, 898 F.3d 270, 282 (2d Cir. 2018). Thus, where "it cannot be said that trial of the facts surrounding the commission of the alleged offense would be of no assistance," courts cannot engage in "a premature adjudication as to the sufficiency of the government's evidence." *Id.* at 278, 283 (quotation marks omitted).

Here, the Government disputes that it has offered a full proffer of its evidence because it has not, for example, provided an affidavit with "the expected testimony of Analyst-2 or other witnesses whose testimony may bear on the defendant's intent behind his outreach to Analyst-2." (Opp. at 23.) Defendant retorts that the Government "provides no indication that such witnesses exist or reason to believe that other individuals would be privy to the private communications between [Defendant] and Analyst-2." (Reply at 9 n.4.) In essence, Defendant predicts that the Government's reference to additional, forthcoming evidence is a bluff. But the Court "cannot approve dismissal of an indictment on the basis of predictions as to what the trial evidence will be, and cannot force the government to make a proffer of its trial evidence." *United States v.*

*Singletary*, No. 18-CR-153, 2018 WL 8120398, at *2 (W.D.N.Y. Nov. 14, 2018) (cleaned up), *report and recommendation adopted*, No. 18-CR-153, 2019 WL 850673 (W.D.N.Y. Feb. 22, 2019) (quoting *United States v. DeLaurentis*, 230 F.3d 659, 661 (3d Cir. 2000)). The Court therefore concludes that a full proffer of the Government's evidence as to Defendant's alleged witness tampering has not yet been made. Accordingly, the Court does not analyze the sufficiency of the Government's evidence at this juncture. *See Perez*, 575 F.3d at 166.

Separately, Defendant argues that Count Six of the superseding indictment fails to state an offense "because the only alleged false statement is one the Superseding Indictment elsewhere alleges Analyst-2 knew to be false" and "[Defendant] is not alleged to have asked Analyst-2 . . . to say anything at all." (Mot. at 1, 16; *see also* Reply at 8-9.) This argument fails for the same reason: It functionally asks the Court to conclude that the factual allegations in the superseding indictment constitute the entire universe of the Government's evidence as to the witness tampering charge. But as previously discussed, the Government has not made a full proffer of its evidence, including the testimony of Analyst-2 and other witnesses with knowledge of the Defendant's intent in contacting Analyst-2. (Opp. at 23.) Such testimony could cast doubt on whether Analyst-2 knew Defendant's alleged false statement to be false, or whether Defendant indeed asked Analyst-2 to falsely testify.

Rather, because the Government has not made a full evidentiary proffer, the indictment sufficiently states a charge for witness tampering because it "contains the elements of the offense charged and fairly informs a defendant of the charge against" Defendant, such that he may "plead acquittal or conviction to bar future prosecution on the same offense." *Nunez*, 2023 WL 5432513, at *2. Specifically, Count Six charges Defendant with witness tampering in violation of 18 U.S.C. §§ 2, 1512(b)(1), 1512(j), 3147(1), alleges that Defendant knowingly contacted

Analyst-2 using an encrypted messaging application to influence his testimony at Defendant's upcoming criminal trial, describes the location of the alleged tampering, and identifies the time period when the relevant activity occurred. (*See* ECF No. 49 ¶ 47.) These allegations are sufficient to satisfy Rule 7(c).

**2. Venue**

Next, Defendant contends that the Court must dismiss Count Six because venue in this district is improper. (*See* Mot. at 20-25; Reply at 9-10.)

As an initial matter, the superseding indictment alleges that Defendant engaged in witness tampering "in the Southern District of New York." (ECF No. 49 ¶ 47.). Defendant asserts that this "bare allegation" cannot support venue. (Reply at 9.)

Defendant is mistaken. Courts deny pre-trial motions to dismiss where the Government "allege[s] that criminal conduct occurred within the venue, even if phrased broadly and without a specific address or other information." *United States v. Ohle*, 678 F.Supp.2d 215, 231 (S.D.N.Y. 2010) (quotation marks omitted); *see also United States v. Murgio*, 209 F. Supp. 3d 698, 721 (S.D.N.Y. 2016) (Nathan, J.) (denying pre-trial motion to dismiss for improper venue as "futile" where indictment alleged that defendant "accepted bribes in the Southern District of New York." (quotation marks omitted)). Thus, Defendant's "pretrial motion to dismiss based on contrary allegations . . . must be denied." *Stein*, 429 F. Supp. 2d at 643.

On the merits, Defendant fares no better. Defendant is charged with witness tampering under 18 U.S.C. § 1512(b)(1). (ECF No. 49 ¶ 47.) Section 1512(i) provides that "[a] prosecution under this section . . . may be brought in the district in which the official proceeding (whether or not pending or about to be instituted) was intended to be affected." 18 U.S.C. § 1512(i). Accordingly, the Second Circuit has held that "all that is required by 18 U.S.C. § 1512(i)" to establish proper venue is that the defendant "was trying to tamper with" a criminal

proceeding "run out of the Southern District of New York." *United States v. Fakih*, 264 F. App'x 78, 80 (2d Cir. 2008) (summary order). The superseding indictment does so here by alleging that Defendant contacted Analyst-2 to influence Analyst-2's testimony in Defendant's criminal proceeding in this district. (*See* ECF No. 49 ¶ 47.) Those allegations are sufficient to satisfy statutory venue under § 1512(i).

Defendant does not dispute that the allegations in the superseding indictment sufficiently allege venue under § 1512(i). (*See* Mot. at 20-25; Reply at 9-10.) Rather, Defendant argues that the Supreme Court's recent decision in *Abouammo v. United States*, 608 U.S. 597 (2026), renders "Section 1512(i)'s proceeding-location prong" unconstitutional. (Reply at 10.) In *Abouammo*, the Court analyzed venue vis-à-vis 18 U.S.C. § 1519, which prohibits knowing falsification of a document with the intent to obstruct a federal investigation. *Id.* at 599. The Court re-affirmed that, where Congress does *not* enact a statutory venue provision, courts should determine venue by identifying "the offense's essential conduct elements," before "ascertain[ing] the location of those criminal acts." *Id.* at. 602-03 (quotation marks omitted). Applied to § 1519, which does *not* have an express venue provision, "[t]he only prohibited act in that statute is the falsification of a document," so "the venue for trying a § 1519 offense must be where a document's falsification happened," not where any subsequent investigation and criminal proceeding against the defendant took place. *Id.* at 604.

However, *Abouammo* recognized "an important qualification" to this "essential conduct elements" test: It has been applied only to offenses for "which Congress did not specify a venue rule to accompany a given offense." *Id.* at 603 n.3 (collecting cases). The Court therefore disavowed "address[ing]" any "statutorily created venue scheme" and specifically disclaimed deciding the constitutionality of the venue provision at issue here in § 1512(i). *Id.*

When Congress *does* enact a venue provision, "Congress's view of appropriate venue, even if not coincident with [the] 'conduct elements' test, may make a difference to the analysis." *Id.* Put differently, in *Abouammo*, the Court declined to hold that the "essential conduct elements" constitutes the constitutional floor with respect to venue for criminal prosecutions. Of course, Congress does not have *carte blanche* to deign venue proper in far-flung districts entirely unrelated to given crimes. *See id.* ("[T]he venue rule is constitutional, and Congress lacks the power to finally decide what it means or when it is violated."). But when Congress affirmatively legislates a venue as proper, *Abouammo* suggests that lower courts should take it seriously, even if the designated venue does not satisfy the strictures of the "essential conduct elements" test.

Helpfully, the Second Circuit has long recognized one alternative to the "essential conduct elements" test that sheds light on the constitutionality of congressional venue provisions: the "substantial contacts" test. In *United States v. Saavedra*, the Second Circuit established that courts "should ask whether the criminal acts in question bear 'substantial contacts' with any given venue" in order "[t]o determine whether the application of [the] venue provision in a given prosecution comports with constitutional safeguards": specifically, by looking to "(1) the site of the crime, (2) its elements and nature, (3) the place where the effect of the criminal conduct occurs, and (4) suitability of the venue chosen for accurate factfinding." 223 F.3d 85, 92-93 (2d Cir. 2000) (quoting *United States v. Reed*, 773 F.2d 477, 481 (2d Cir. 1985))[3]; *see also United*

---

[3] The Second Circuit caveated that the substantial contacts test "does not represent a formal constitutional test." *Saavedra*, 223 F.3d at 93. Relatedly, the Second Circuit has elucidated that the substantial contacts test is not universally applicable to every venue challenge. For example, the substantial contacts analysis is immaterial where, for example, "an overt act in furtherance of a criminal conspiracy has been committed in the district" because such a venue "necessarily has sufficient 'substantial contacts' to justify a finding of venue." *United States v. Kirk Tang Yuk*, 885 F.3d 57, 70 (2d Cir. 2018). Nevertheless, "[t]he substantial contacts rule offers guidance on how to determine whether the location of venue is constitutional, especially in those cases where the defendant's acts did not take place within the district selected as the venue

*States v. Svoboda*, 347 F.3d 471, 484 n.12 (2d Cir. 2003) (venue proper where defendant's conduct had a "sufficient nexus with the Southern District"). And, in the face of a charge of obstruction of justice under § 1503, the Second Circuit acknowledged that venues enduring "the effects of a crime . . . have an obvious contact with the litigation in their interest in preventing such effects from occurring." *Reed*, 773 F.2d at 482; *see also United States v. Johnson*, 323 U.S. 273, 275 (1944) ("Congress may . . . provide that the locality of a crime shall extend over the whole area through which force propelled by an offender operates."). Indeed, the Second Circuit has repeatedly recognized that obstruction of justice offenses under § 1512 affect the districts housing the relevant official proceeding. *See United States v. Davis*, 689 F.3d 179, 187 n.3 (2d Cir. 2012) (observing that § 1512(i) establishes venue "both in a district where a defendant commits an act *and in the district where the act has an effect*." (emphasis added)); *see also United States v. Gonzalez*, 922 F.2d 1044, 1054 (2d Cir. 1991) ("Congress enacted [18 U.S.C. § 1512(i)]" to codify court decisions finding venue in "the district where government proceedings were *affected*." (emphasis added)).

Accordingly, the Court concludes § 1512(i) passes constitutional muster because the "district in which the official proceeding . . . was intended to be affected" endures the "effects" of witness tampering, *see Davis*, 689 F.3d at 187 n.3; *Gonzalez*, 922 F.2d at 1054, and these effects provide a sufficient nexus—also known as substantial contacts—with this district to survive constitutional scrutiny, *Saavedra*, 223 F.3d at 92-93. In so ruling, this Court joins the

---

for trial." *Saavedra*, 223 F.3d at 93. In other words, though the substantial contacts test is not *necessary* (and not informative in the obvious case where criminal conduct occurs in the selected venue), its satisfaction suggests that the relevant district is constitutionally *sufficient*. *Id.* Because, in this case, Defendant protests that his alleged conduct underlying the witness tampering charge took place outside of this district and the Court determines that the substantial contacts test is satisfied, the Court concludes that resort to the substantial contacts test is proper and sheds light on the constitutionality of § 1512(i).

unanimous chorus of courts upholding the constitutionality of § 1512(i). *See United States v. Trie*, 21 F. Supp. 2d 7, 18 (D.D.C. 1998) ("The fact that an 'official proceeding' is taking place in a district and that there is an impact on the proceeding is sufficient. Congress' determination in this regard is an allowable exercise of its constitutional power, and the Court concludes that [Section 1512(i)] is constitutional."); *United States v. Franklin*, No. 24-CR-167, 2025 WL 3542130, at *3 (E.D. Okla. Dec. 10, 2025) ("[W]e disagree with the Defendant's contention that 18 U.S.C. § 1513 and 18 U.S.C. § 1512 are unconstitutional because they provide for venue in the district where the official proceedings are intended to be impacted."); *Wilkins v. United States*, 682 F. Supp. 3d 1137, 1152 (S.D. Fla. 2023) ("Congress was well within its discretion" to recognize venue in "the district in which the official proceeding (whether or not pending or about to be instituted) was intended to be affected."); *see also United States v. Hayden*, No. 20-40585, 2022 WL 73049, at *3 (5th Cir. Jan. 7, 2022) ("To be sure, it is a stretch to say that section 1512(i) is unconstitutional given Congress' constitutional power to define where an offense occurs for purposes of a venue analysis.").

It is true that *Abouammo* rejected a similar theory that "the contemplated effects of the falsification [were] part of the essential conduct of a § 1519's offense." *Abouammo*, 608 U.S. at 601 (cleaned up). But that rejection operated under the more stringent analysis of the "essential conduct elements" test, which, as discussed above, is not dispositive where Congress enacts an express venue provision, as it did in § 1512(i). *See id.* at 603 n.3. Indeed, as discussed above, the congressional wisdom reflected in § 1512(i) codifies the obvious nexus of the affected proceedings to a charge of witness tampering. *Accord Reed*, 773 F.2d at 486 ("The contacts with the Southern District for jurisdictional and enforcement purposes are no less because the attempt to obstruct the proceeding there failed."). The Court declines Defendant's invitation to

transmute the logic of *Abouammo* to this case, thereby ignoring that congressional wisdom in contravention of the Supreme Court's admonition. *See Abouammo*, 608 U.S. at 603 n.3 ("Congress's view of appropriate venue, even if not coincident with our 'conduct elements' test, may make a difference to the analysis.").

**B. Motion to Strike**

Finally, Defendant moves to strike the phrases "used intimidation" and "threatened" from the superseding indictment as surplusage. (Mot. at 25-26; Reply at 10-11.) Defendant contends that the Government points to no evidence supporting witness tampering via intimidation or threat, but the Government references intimidation and threat in its superseding indictment and proposed jury instructions. (*See* ECF No. 49 ¶ 47; ECF No. 75 at 44-45.)

At the outset, Defendant's central premise needs a qualifier: The Government has not *yet* adduced evidence supporting witness tampering via intimidation or threat. Should the Government provide such evidence at trial—which it very well may, seeing as the Government has not introduced the full panoply of its evidence, including the testimony of Analyst-2—there would be no question that striking the relevant language would be improper. *See Scarpa*, 913 F.2d at 1013 ("If evidence of the allegation is admissible and relevant to the charge, then regardless of how prejudicial the language is, it may not be stricken." (cleaned up)). That uncertainty is the very reason that courts "generally delay ruling on any motion to strike until after the presentation of the Government's evidence at trial." *Maxwell*, 534 F. Supp. 3d at 322.

Additionally, the Court has doubts as to whether reciting and instructing the jury on statutory elements constitute the kind of "inflammatory and prejudicial" language that should be struck under Rule 7(d). *Bin Laden*, 91 F. Supp. 2d at 621. Defendant's invitation to strike is particularly dubious in light of Rule 7(d)'s "exacting standard," *United States v. Coffey*, 361 F.

Supp. 2d 102, 123 (E.D.N.Y. 2005), and the Second Circuit's endorsement of indictments that "track the language of the statute," *United States v. Flaharty*, 295 F.3d 182, 198 (2d Cir. 2002).

In any event, the Court declines to strike language from the superseding indictment at this time. Instead, the Court will walk "the well-worn path of others in this District and reserve the issue for trial." *Maxwell*, 534 F. Supp. 3d at 322. Defendant may renew his motion then.

**IV. Conclusion**

For the foregoing reasons, Defendant's motion to dismiss Count Six, or in the alternative, strike language from Count Six of the superseding indictment is denied.

The Clerk of Court is directed to close the motion at ECF No. 66.

SO ORDERED.

Dated: October 14, 2026
New York, New York

J. PAUL OETKEN
United States District Judge